**GREEN TREE ACCEPTANCE, INC., Appellant,**

v.

**Alvin PIERCE and Joyce Pierce, Appellees.**

No. 12–88–00140–CV.

Court of Appeals of Texas, Tyler.

March 20, 1989.

S. Barcus Hunter, Fortworth, for appellant.

Emerson Stone, Stone & Stone, Jacksonville, for appellees.

BILL BASS, Justice.

Appellees, Alvin and Joyce Pierce, sued Commodore Home Systems, Inc. (hereinafter Commodore), Porter Affordable Homes, Inc. (hereinafter Porter), and Green Tree Acceptance, Inc. (hereinafter Green Tree), seeking damages, attorney's fees, and costs allegedly sustained by them as a result of violations of the Deceptive Trade Practices Act (hereinafter DTPA) that occurred in regard to their purchase of a mobile home.

Judgment was entered upon the jury's verdict rescinding the retail installment contract and directing Green Tree to return the $6,435.15 paid by the appellees under the terms of the installment contract. The judgment also granted Green Tree the right to possession of the mobile home and awarded appellees $7,500.00 in attorney's fees. We reverse and render in part and affirm in part.

On October 2, 1984, appellees bought a Lifestyle Wildwood mobile home. The home was manufactured by Commodore and sold to the appellees by Porter. The purchase was financed by Green Tree after they were assigned the retail installment contract.

There was evidence offered at trial that the mobile home collided with a bridge during the course of its delivery to the appellees' homesite. After it was delivered to the appellees, they began to notice defects in the mobile home. On January 27, 1986, Larry Lykins, a Texas Department of Labor and Standards representative, inspected the mobile home and found seventy-two (72) defects.

Suit was originally filed against Green Tree as well as Commodore and Porter. Both Commodore and Porter subsequently filed for protection under the United States Bankruptcy Code and were severed from this cause.

Appellees did not allege that Green Tree was liable except derivatively under the "FTC rule."[1] The evidence showed that the appellees made payments to Green Tree under the contract of $6,435.13 which consisted of thirteen (13) payments of $495.01 each.

In point of error number 3, appellant contends that there was no finding made by the jury that Green Tree, Commodore, or Porter committed a deceptive act or practice and, therefore, the appellees' motion for judgment should not have been granted.

In Special Issue Number 1 the jury was asked to determine if the mobile home that was delivered was merchantable. The jury found that the home was not merchantable.

Tex.Bus. & Com.Code § 17.50(a)(2) provides as follows:

(a) A consumer may maintain any action where any of the following constitute a producing cause of actual damages:

(2) breach of an express or implied warranty.

The DTPA does not define the term "warranty." Furthermore, the Act does not create any warranties; therefore, any warranty must be established independently of the Act. *La Sara Grain Company v. First National Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex.1984), *on remand*, 676 S.W.2d 183 (Tex.App.—Corpus Christi 1984, no writ). Implied warranties are derived primarily from statute. *Id.* In *La Sara*, the court indicated that Tex.Bus. & Com.Code Ann. §§ 2.314, 2.315 (Vernon 1968) were examples of such statutorily derived implied warranties. *Id.*

Tex.Bus. & Com.Code Ann. § 2.314 (Vernon 1968) reads, in part:

Sec. 2.314. Implied Warranty: Merchantability; Usage of Trade

(a) Unless excluded or modified (Section 2.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind ...

(b) Goods to be merchantable must be at least such as....

....

(3) are fit for the ordinary purposes for which such goods are to be used....

The jury found a breach of an implied warranty, a violation of the DTPA which entitled the appellees to the protections and remedies provided by the Act. Point of error number 3 is overruled.

In point of error number 2, appellant contends that there was no finding by the jury of producing cause and, therefore, the trial court erred in rendering judgment for the appellees.

Tex.Bus. & Com.Code Ann. § 17.50(b)(1) and (3) (Vernon 1981) reads as follows:

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of actual damages found by the trier of fact. In addition, the court shall award two times that portion of the actual damages that does not exceed $1,000. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1,000;

....

(3) orders necessary to restore to any party to the suit any money or property, real or personal, which may have

---

**1.** 16 C.F.R. § 433.2 (1976) provides:

In connection with any sale or lease of goods or services to consumers, in or effecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of Section 5 of that Act for a seller, directly or indirectly to:

(a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face type:

NOTICE
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

been acquired in violation of this subchapter; . . . .

The term "actual damages" in subdivision (1) has been interpreted to mean common-law damages. *Smith v. Kinslow*, 598 S.W. 2d 910, 915 (Tex.Civ.App.—Dallas 1980, no writ). The amount of damages for breach of warranty at common law is the amount that will give the complaining party the full benefit of the contract. *Id.* On the other hand, subdivision (3) is a statutory recognition of the equitable remedy of rescission and restitution, based on the theory that the complaining party may elect to avoid the contract, surrender any benefits received, and recover that which he parted with. *Id.*

If appellees had sought to recover damages under the contract, they would have been required to show that the deceptive trade practice complained of was the producing cause of their actual damages. Tex.Bus. & Com.Code Ann. § 17.50(a) (Vernon 1968).

However, in the present case, appellees sought to avoid the contract and were therefore required to prove only those facts necessary to justify its rescission. A plaintiff pursuing the remedy provided by subdivision (3) must meet all the requirements mandated by Tex.Bus. & Com.Code Ann. § 2.608 (Vernon 1968). *Freeman Oldsmobile Mazda v. Pinson*, 580 S.W.2d 112, 114 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.).

> The elements of revocation of acceptance under sec. 2.608 of the Uniform Commercial Code are: (1) initial acceptance (with a reasonable assumption that the nonconforming item would be cured and it is not cured, or without discovery of the non-conforming item of acceptance was induced by difficulty of discovery or by seller's assurance); (2) of non-conforming item; (3) such non-conformity substantially impairs the value to the buyer; (4) and revocation occurs within a reasonable time; (5) in any event, the revocation must occur before a substantial change in the condition of the good oc-

curs (which change is not caused by defect of the goods).

*Neily v. Aaron*, 724 S.W.2d 908, 914 (Tex. App.—Fort Worth 1987, no writ).

Since appellees were not seeking damages but rescission of the contract, it was not necessary for them to prove that the breach of warranty was the producing cause of actual damages. Point of error number 2 is overruled.

■ In point of error number 1, appellant claims that the trial court erred in rendering judgment for appellees since there was no finding by the jury of the amount of actual damages. In its sixth point, appellant urges the trial court erred in granting the Pierces' motion for judgment because the judgment exceeds the limits of liability imposed by the FTC rule and article 5221f § 18(i).

Appellant argues that under the DTPA a plaintiff may recover actual damages measured by either the "benefit-of-the-bargain" standard or the "out-of-pocket" standard. In the present case, appellees sought rescission of the contract and restoration of consideration paid under section 17.50(b)(3). Actual damages and restoration of consideration paid are inconsistent remedies. *David McDavid Pontiac v. Nix*, 681 S.W. 2d 831 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Since appellees were seeking to avoid the contract, the Pierces argue they were not required to prove their actual damages under the contract.

Green Tree further contends that it was necessary for appellees to prove their actual damages so that Green Tree's derivative liability under the FTC rule and Tex.Rev. Civ.Stat.Ann. art. 5221f, § 18(i) (Vernon 1989) could be determined. The FTC rule [2] was aimed primarily at situations in which a seller executed a credit contract and then assigned the contract to a credit company which took it free and clear of any claims and defenses the buyer had against the seller. Guidelines on Trade Regulation Rules Concerning Preservation of Consumer's Claims and Defenses, 41 Fed.Reg. 20,-222, 20,023 (1976). In abrogating the hold-

**2.** *See* Fn. 1.

er-in-due-course rule in consumer credit transactions, the FTC preserved the consumer's claims and defenses against the creditor-assignee. The FTC designed the rule to reallocate the cost of seller misconduct to the creditor. The commission felt the creditor was in a better position to absorb the loss or recover the cost from the guilty party—the seller. *Home Savings Association v. Guerra,* 733 S.W.2d 134 (Tex.1987). In *Guerra,* the Supreme Court held that "[a] creditor's derivative liability for seller misconduct under the FTC rule is limited to the amount paid under the credit contract. *Id.*

Tex.Rev.Civ.Stat.Ann. art. 5221f, § 18(i) (Vernon Supp.1989) provides as follows:

> (i) In the event that a consumer asserts a claim or defense against the holder of the debt instrument which arises from claims and defenses of the consumer against the retailer of a manufactured home, then the consumer's recovery against the holder of such a debt instrument arising from claims and defenses by the consumer against the retailer shall not exceed the actual amounts paid by the consumer to the holder of such a debt instrument and cancellation of the remaining balance on the debt instrument. If the remaining balance of the debt instrument is cancelled, the manufactured home shall be returned to the holder.

Appellant asserts that, under these two provisions, if the appellees' actual damages exceeded the total payments under the contract, their recovery would be limited to the amount paid under the contract; and if the appellees' actual damages were lower than the total payments made under the contract, they would be limited to their actual damages. Appellant therefore contends it was necessary for the jury to find the amount of actual damages.

Rescission is clearly a "claim or defense" which the consumer may legitimately assert against the holder of the debt. The remedy of rescission assumes the restoration to the consumer of all amounts paid under the contract, the cancellation of the balance of the indebtedness, and the return of the goods to the holder of the indebtedness. The FTC rule and article 5221f, section 18(i), limit the consumer's recovery to the amounts paid, cancellation of the balance due, and return of the manufactured home to the seller—precisely what rescission mandates.

The Pierces sought to cancel the contract and secure the return of their money paid under the contract. In our view the remedy of rescission is not inconsistent with the FTC rule or the State statute. Having established their right to rescission, the Pierces were not required to prove, nor the jury required to find, the amount of actual damages. The judgment of the trial court does not exceed the limits imposed by the rule or the statute. Appellant's points one and six are overruled.

■ In point of error number 4, appellant contends that the trial court erred in entering judgment for rescission because appellees did not pray for such relief. In pertinent part appellees pleaded and prayed as follows:

### IV.

The Plaintiffs at the time the mobile home was delivered to their lot northwest of Jacksonville, Texas, were not aware of the fact that the mobile home had been damaged in transit to Jacksonville from Longview, Texas; and, although the Plaintiffs were aware of the fact that there had been a collision or impact with a bridge, they were led to believe that all damage had been corrected when in truth and in fact such was not the case.

### V.

The Defendants in this case have been notified by the attorneys for the Plaintiffs on more than one occasion, complying with the Deceptive Trade Practices Act of the State of Texas, and the Defendants have failed to rectify the various and serious problems that have been called to their attention beginning in late 1984, throughout the year 1985, and the early part of 1986, including the possible

compliance with the new law affecting complaints of consumers to the Department of Labor and Standards of the State of Texas involving mobile homes; and, although the Plaintiffs have sought rescission and the Defendants have refused the offers of the Plaintiffs to rescind, it now becomes necessary to sue for rescission, damages and attorneys' fees under the Deceptive Trade Practices Act.

. . . .

WHEREFORE, Plaintiffs pray that the Defendants be cited to appear and answer herein, and that on final hearing hereof Plaintiffs do have and recover judgment of and from the Defendants for such damages as are shown and found by the Court and/or Jury and attorney's fees and costs of court, and for such other and further relief as the Plaintiffs may show themselves justly entitled to receive.

In *Burnett v. James,* 564 S.W.2d 407, 409 (Tex.Civ.App.—Dallas 1978, writ dism'd), the court stated the following:

> The general rule is that a prayer for general relief will authorize judgment for any relief a trial court has jurisdiction to grant so long as the judgment is supported by the allegations and proof and is consistent with the theory of recovery stated in the pleadings. *Jennings v. Texas Farm Mortgage Co.,* 124 Tex. 593, 80 S.W.2d 931 (1935); *Seureau v. Mudd,* 515 S.W.2d 746 (Tex.Civ.App.— Houston [14th Dist.] 1974, writ ref'd n.r. e.). However, in certain instances, the type of relief must be specifically prayed for or the trial court cannot grant it. Rescission is one of these since rescission of a contract is inconsistent with a claim for damages, based on affirmance of the contract. *Freeman v. Anderson,* 119 S.W.2d 1081, 1083 (Tex.Civ.App.—Waco 1938, no writ); 2 McDonald, Texas Civil Practice 36.25 (1970).

The court held that a prayer for general relief would not support a judgment for rescission under the Deceptive Trade Practices Act.

The ostensible preservation of an isolated and inflexible rule requiring a special prayer for rescission seems anomalous to Texas' traditionally liberal pleading principles. There is, in fact, respectable Texas authority that factual allegations in the petition, coupled with a prayer for general relief, are sufficient to support a decree granting rescission.

In *Hagelstein v. Blaschke,* 149 S.W. 718 (Tex.Civ.App.—Amarillo 1911, no writ), Blaschke sued Hagelstein claiming Hagelstein had shown and professed to sell him one tract of land, but had fraudulently conveyed another tract. Blaschke's petition had stated the facts, but prayed only that a court of equity award him such relief as the facts alleged and the proof showed him to be entitled. The trial court cancelled the deed, the notes given in consideration of the deed, and decreed the return to Blaschke of payments made before the discovery of the fraud or mistake. On appeal, Hagelstein urged the trial court erred in granting rescission, contending that Blaschke's prayer was insufficient because it failed to show whether Blaschke sought rescission or damages for breach of contract. The court of appeals held that, in the light of the facts pleaded, such a prayer was adequate to warrant either rescission or an award of damages. Factual allegations in the petition, joined with a prayer for general relief, were also held sufficient in *Moore v. City of Beaumont,* 195 S.W.2d 968 (Tex.Civ.App.—Beaumont 1946), *aff'd,* 146 Tex. 46, 202 S.W.2d 448 (1947); *United Savings Life Insurance Company v. Glenn,* 473 S.W.2d 629 (Tex.Civ.App.— Waco 1971, writ ref'd n.r.e.); and *Gossett v. Manley,* 43 S.W.2d 622 (Tex.Civ.App.— Waco 1931, writ dism'd).

The purpose of the prayer is to see that the defendant is not prejudiced by the assertion of some wholly unexpected theory of relief—one not presaged in the pleadings and justified by the proof. What is so extraordinary about the remedy of rescission that it should require a special prayer contrary to the general rule? *Burnett* says that rescission represents just such a special case because "rescission of a contract is inconsistent with a claim for

damages, based on affirmation of the contract." The statement is certainly correct in principle, but inappropriate and unpersuasive in the DTPA context. Since the adoption of the Texas version of the UCC in 1965, the aggrieved buyer in transactions under the code is no longer required to elect between revocation of acceptance and damages for breach. Tex.Bus. & Com. Code Ann. § 2.608, comment 2 (Tex.UCC) (Vernon 1968).

*Burnett* cites *First State Bank of Bedford v. Miller,* 563 S.W.2d 572 (Tex.1978), for the proposition that "in the absence of a prayer for rescission ... [a] judgment granting this remedy cannot stand." *First State Bank of Bedford v. Miller* was a usury case in which the Supreme Court denied the recovery of usurious interest paid because the plaintiff failed to *plead* for its recovery.

The other case authority relied on by the *Burnett* court was *Freeman v. Anderson,* 119 S.W.2d 1081, 1083 (Tex.Civ.App.— Waco 1938, no writ). Anderson sued Freeman for damages by reason of the failure of Freeman's title to 100 acres he had conveyed to Anderson. The facts alleged were appropriate to breach of warranty and damages. The trial court entered judgment granting rescission. The court of appeals reversed and remanded because "mere failure of title in the vendor does not afford a ground for cancellation or rescission in the absence of fraud, mistake, or other exceptional circumstances." At this distance, it is difficult to appreciate how proof of the failure of the vendor's title could fail to show "fraud, mistake, or other exceptional circumstances." However, it is clear that the plaintiff did not plead for rescission.

> Since appellee thus elected to affirm the contract and sue for damages for the breach thereof, the trial court could not render judgment for cancellation of the deed and order a return of the purchase price. (Citations omitted). *This is especially true where the appellee did not pray for rescission.* (Emphasis ours).

*Freeman,* 119 S.W.2d at 1083.

The *Freeman* case cites as its authority *Wilkerson v. Yarbrough,* 257 S.W. 535 (Tex.Comm'n App.1924). Wilkerson instituted the action to cancel an agreement to give an oil lease and also to cancel the oil lease. Yarbrough counterclaimed for damages for breach of contract—the benefit of the bargain. The trial court cancelled the lease and awarded Wilkerson damages on his counterclaim, including recovery of a $500 part payment of the consideration for the lease. The commission of appeals held the trial court erred in decreeing the return of the $500 consideration since Yarbrough had failed to plead for its recovery. In concluding that there were no pleadings to support such a recovery, the opinion went on to add that "[h]e does not even pray for the return of the $500 paid...."

In the cases cited in *Burnett* and their antecedents as authority for the proposition that rescission is a remedy requiring a special prayer, the courts based their decisions on the absence of any pleading whatsoever supporting the relief granted in the trial court. The failure to "even pray for" such relief serves only to intensify the entire absence of pleading, the real basis for the courts' holding. Taken together, they are insufficient authority upon which to resurrect a hoary, long-abandoned rule of equity pleading at odds with Texas practice and utterly inappropriate to a DTPA case. As noted, there is more apposite authority to the contrary. The allegations of the Pierces' petition plainly state that they were seeking rescission of the contract. These allegations, joined by a prayer for general relief, are sufficient to support judgment for rescission.

Moreover, the record reflects that appellant never presented an exception or objection to the trial court contending that the prayer for relief made by appellees would not support a judgment for rescission. The only mention of appellees' prayer was made at appellant's motion for directed verdict and, in pertinent part, appears as follows:

> MR. HUNTER: As far as the implied warranty of merchantability that is of course occurs under Article 21.314 (sic) of the UCC. Essentially, what that says

there is an implied warranty that a good will have—will be reasonably suitable for the purposes which it was intended. The Plaintiffs' own testimony has been that this home is, has been habitable, they have been living in it for three, four years obviously, it's suitable for the purpose it's intended to be for.

As far as rescission of the contract that has not been plead.

MR. STONE: Yes, it has. Look at my pleadings, Counsel. The word rescission is in there.

MR. HUNTER: And in terms of the repairs there is no evidence in the record of what it would cost to fix this home. There is nothing that the Jury can rely on to give these Plaintiffs to award damages. They simply could not answer a Jury question on damages because they don't have any numbers to go on. That FTC holder in due course rule is not an automatic penalty. It doesn't mean if you come in and prove that there is something wrong with your mobile home that you are automatically entitled to get all your money back.

MR. STONE: Paragraph 5 of our Original Petition.

THE COURT: You haven't filed an amended?

MR. STONE: No, sir.

MR. HUNTER: Okay. I was looking in the prayer. I'm sorry.

Appellant never specifically objected on the ground that the appellees' prayer for relief would not entitle the appellees to a judgment of rescission.

"In a limited number of instances, relief must be sought by special prayer, or it cannot be awarded against the *defendant's proper objection.*" (Emphasis ours.) 2 R. McDonald, *Texas Civil Practice in District and County Courts* § 6.25 (rev. 1982). Even if we assume, as appellant urges, the survival of the special prayer as a rigid prerequisite to rescission, appellant has raised its objection for the first time on appeal. Error, if any, is therefore waived.

██ Also, in its fourth point of error, appellant complains that the appellees did not prove that the defects in the mobile

home substantially impaired its value to them. The record reveals that no special issue was submitted to the jury on the issue of substantial impairment nor did appellant make any proper objection to such failure.

To be entitled to rescission under Tex. Bus. & Com.Code Ann. § 17.50(b)(3) (Vernon 1987), a consumer must meet the requirement set forth in Tex.Bus. & Com. Code Ann. § 2.608 (Vernon 1988). Section 2.608 provides that the buyer may revoke only if there is substantial impairment of the value "to him." The reference "to him" suggests that the court is to measure the impairment by reference to the particular buyer's specific needs. The suggestion is confirmed by the last clause in the last sentence of Comment 2: "[T]he question is whether the nonconformity is such as will in fact cause a substantial impairment of the value to the buyer though the seller had no advance knowledge as to the buyer's particular circumstance."

The appellees purchased the mobile home on October 3, 1984. Shortly after the home was delivered, and during the first year of possession, appellees repeatedly called both Porter and Commodore to complain about the defects in the mobile home. The record reveals that repairmen were sent to the mobile home on at least five occasions. On January 27, 1986, Larry Lykins, an employee of the Department of Labor and Standards, inspected the appellees' mobile home and found seventy-two (72) defects in the home. Lykins testified that out of the seventy-two defects there were three main problems. First, there was a gap between the two halves of the mobile home. Second, the siding was not properly sealed, allowing moisture behind the siding. (Lykins testified that this could cause the home to become uninhabitable because the siding will swell and buckle and possibly come completely off the outside walls of the home.) Third, there were problems with the roof's construction which allowed moisture to infiltrate the structure of the home.

Mr. Pierce testified that the gaps between the two halves of the mobile home

run for approximately 66 feet and is 6 to 8 inches wide in some places. He also testified that there are two locations where the roof leaks. He further testified that the bathtub was improperly constructed and causes water to run down the outside wall of the mobile home.

Mrs. Pierce testified that she has to use a stick and string to enable her to close the front door. She testified that the roof is bowed, leaking, and that the shingles are falling off. She stated that the floor squeaks like an "old house," and further testified that cold air comes through the gap between the two halves of the mobile home and, as a result of this defect, the home is very cold and difficult to heat.

The evidence conclusively proves that the value of the mobile home was substantially impaired to the Pierces. The trial court need not submit an issue to the jury on matters conclusively established. Moreover, the question of substantial impairment to the buyer is but one of the component elements of revocation of acceptance. Although the trial court submitted other issues necessarily referable to the same ground of recovery, Green Tree did not object to the trial court's failure to submit the question of substantial impairment. Therefore, even if substantial impairment was not conclusively established, the omitted issue must still be deemed found to support the judgment. Tex.R.Civ.P. 279. Appellant's fourth point is overruled.

■ In its fifth point, Green Tree complains that the trial court erred in not entering judgment on its counterclaim for principal, accrued interest and attorney's fees. The trial court correctly ordered rescission of the contract, and Green Tree was awarded the title and possession of the mobile home. The Pierces successfully defended against the counterclaim by showing their right to rescission. The Pierces stipulated that, if Green Tree recovered on its counterclaim on the note, $6,000 was a reasonable and necessary attorney's fee. Green Tree did not prevail on its counterclaim for the principal and interest due and is therefore not entitled to attorney's fees. Green Tree's fifth point is overruled.

■ In point of error number 7, Green Tree argues that it was entitled to an offset for rental value. The appellees bought the home in question in October of 1984 and thereafter made thirteen monthly payments. After November 1987 the appellees made no further payments of any kind to appellant, yet they continued to occupy the mobile home. As part of its counterclaim, Green Tree sought recovery of the fair rental value for the time that appellees lived in the home.

Green Tree submitted a special issue and secured a finding that the rental value for the use of the mobile home from December 1, 1985, through February 1, 1988, was $6,500.00. Green Tree contends that the trial court erroneously disregarded a valid jury finding by entering judgment for the appellees and against Green Tree on its counterclaim.

Restoration under section 17.50(b)(3) "is a statutory recognition of the equitable remedy of rescission and restitution, based on the theory that the complaining party may elect to avoid the contract, surrender any benefits received and recover that which he parted with." *Kinslow*, 598 S.W. 2d at 916. Where rescission is allowed under the DTPA for breach of warranty, appropriate allowances must be made to prevent unjust enrichment. D. Bragg, P. Maxwell, and J. Longley, *Texas Consumer Litigation* § 8.11 (2nd ed. 1983). We conclude that the trial court erred in failing to award appellant an offset for the rental value as found by the jury. Appellant's seventh point is sustained.

The jury found that the total amount of consideration paid by appellees was $6,435.13. Green Tree is entitled to an offset of $6,500.00 for the period that appellees occupied the home, thus resulting in a net recovery of $46.87 to appellant.

■ In point of error number 8, Green Tree contends that appellees did not prove a cause of action under the DTPA and, therefore, the trial court erred in awarding them attorney's fees. Attorney's fees are recoverable in an action under section 17.-50(b)(3) for rescission and restoration of the

consideration paid. *United Postage Corp. v. Kammeyer,* 581 S.W.2d 716, 723 (Tex. Civ.App.—Dallas 1979, no writ).

We further note "that a consumer can recover attorney fees incurred in the successful prosecution of a DTPA claim, even though the amount of damages awarded to the consumer is entirely offset by the amount awarded to an opposing party." *Matthews v. Candlewood Builders,* 685 S.W.2d 649, 650 (Tex.1985); *McKinley v. Drozd,* 685 S.W.2d 7 (Tex.1985). We overrule appellant's eighth point of error.

■ In point of error number 9, Green Tree claims that the trial court erred in assessing appellees attorney's fees against it because there was no finding by the jury allocating such fees among Green Tree, Commodore, and Porter. Green Tree argues that a special issue should have been submitted asking the jury to find the amount of attorney's fees attributable to Green Tree, Commodore, and Porter.

As a general rule, in a case involving more than one claim, attorney fees can be awarded only for necessary legal services rendered in connection with the claims for which recovery is authorized. *International Security Life Insurance Co. v. Finck,* 496 S.W.2d 544, 546–547 (Tex.1973). The party seeking attorney fees must present evidence of a reasonable fee for only those services necessarily rendered in connection with the claims for which recovery of attorney fees is authorized, segregated from those services rendered in connection with other claims. *Id.* There is, however, an exception to this general rule which occurs when the causes of action in a suit are dependent upon the same set of facts or circumstances for their existence. *De La Fuentes v. Home Savings Association,* 669 S.W.2d 137 (Tex.App.—Corpus Christi 1984, no writ), *rev'd on other grounds, Home Savings Association v. Guerra,* 733 S.W.2d 134 (Tex.1987); *Flint & Associates v. Intercontinental Pipe and Steel, Inc.,* 739 S.W.2d 622 (Tex.App.—Dallas 1987, writ denied). When the causes of action in a single suit are inseparably intertwined, the party suing for attorney's fees may recover all of those fees, even though

attorney's fees are not recoverable under one or more of the other causes of action. *Id.* The present case falls into the exception to the general rule. The suit against Green Tree, Commodore, and Porter involved the same set of circumstances and were interrelated to the extent that the prosecution of the suit required proof of the same facts.

Point of error number 9 is overruled.

That part of the trial court's judgment decreeing that appellant Green Tree take nothing on its counterclaim is reversed and judgment hereby rendered that Green Tree recover against Alvin Pierce and Joyce Pierce the sum of $6,500 as an offset to the relief awarded appellees. In all other respects, the judgment is affirmed.