NUMBER 13-03-275-CV
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI – EDINBURG

 
OMEGA ENERGY CORP.,                                                         Appellants,
v.
GULF STATES PETROLEUM CORP.,                                          Appellee.



On appeal from the 94th District Court
of Nueces County, Texas.




M E M O R A N D U M O P I N I O N

     Before Chief Justice Valdez and Justices Hinojosa and Castillo

                             Opinion by Chief Justice Valdez
 
          
 
          This case stems from a dispute over a contract to purchase a mineral lease. 
Appellant, Omega Energy Corporation, is appealing from the judgment of the trial court
granting appellee, Gulf States Petroleum Corporation, damages in the amount of
$44,891.04. We affirm. 
I. Background
A. The Cody Lease Modifications
          Omega was the lessor of a mineral lease known as the “Cody Lease” located in
Nueces County, Texas. In 1998, Omega and Gulf States entered into a written contract
for the purchase of the Cody Lease. Under the original terms of the contract, Gulf States
was to pay Omega $400,000 in cash by November 15, 1998.
          By November 5, ten days before performance was due, it had become clear that
Gulf States would be unable to comply with the original agreement due to financial
difficulties. The parties therefore entered into a written modification of the original
agreement. Under the modification, Gulf States was to pay $150,000 by November 15 and
the remaining $250,000 by December 15.
          On November 14, one day before performance was due, Gulf States again notified
Omega that it would be unable to comply. The parties again modified the agreement and
delayed the date of the original payment to November 20, although the entire purchase still
was to be made by December 15. 
          On December 15, having paid Omega only $150,000 of the purchase price, Gulf
State failed to meet the deadline. In February 1999, the parties entered into another
modification for the purchase of the lease. Gulf States agreed to pay bi-weekly
installments of $10,000 until the remainder of the purchase price was met. Gulf States
also agreed to pay an additional $30,000 by March 1, 1999; once this sum was paid, Gulf
States would be entitled to commence workover on two currently inoperative wells located
on the Cody lease property, denominated Cody #1 and Cody #2. Gulf States agreed to
handle the workover on the wells solely at its own expense and using its best efforts to
establish production. Between the date of the modification and the date Gulf States fully
paid the purchase price of the lease, all revenues from the wells would be split evenly
between Omega and Gulf States. 
          Gulf States failed to comply with the provisions of the February 1999 modification,
and again negotiated a new modification of the contract with Omega in June 1999. This
final modification stated that Gulf States would pay Omega $10,000 in order to commence
workover on either of the two Cody wells. Again, any revenue from the wells would be split
between the parties until the balance of the contract was fulfilled. 
          Following the June 1999 modification, Gulf States paid Omega $10,000 and
commenced workover of the Cody #2 well. Michael Mitcham, Gulf States’ agent, also
began preparing Cody #1 for production, although he claims this work never amounted to
a complete workover requiring a second $10,000 payment. 
B. The Stanford Agreement
          The following year, Omega sold a group of mineral leases to a third party, Stanford
Petroleum, pursuant to a contract known as the “Stanford Agreement.” This agreement
did not include the Cody Lease. At this point a dispute arose between Gulf States and
Omega regarding their remaining obligations to each other. Gulf States maintained that the
June 1999 modification included a provision that entitled Gulf States to assume the Cody
Lease without further payment to Omega once the Stanford Agreement was finalized, due
to Gulf States’ assistance of Omega in procuring the buyer for the properties involved in
the Stanford Agreement. Omega asserted that the Stanford Agreement had no effect on
the parties under the June 1999 modification.



          Gulf States consequently abandoned work on the Cody wells, and Mitcham
removed and sold pumping equipment from Cody #2 that belonged to Omega. Omega
subsequently lost the Cody Lease. Omega alleges the leases lapsed due to their non-productive state. Gulf States then brought a breach of contract suit against Omega,
alleging fraud, deceptive trade practices and conversion and demanding that Omega
convey the Cody Lease to it without further payment. A trial was held, and at the close of
evidence Gulf States for the first time asked for rescission of the contract. Omega objected
to the request for rescission as it had not been raised as an issue in the pleadings. The
trial court overruled Omega’s objection. 
          The trial court found that Omega did not breach the agreement as modified. In its
findings of fact and conclusions of law, the court determined that the parties had not
agreed in the June 1999 modification that upon the signing of the Stanford Agreement,
Gulf States was entitled to the Cody Lease without paying the remaining balance of the
purchase price. The court concluded, “No such meeting of the minds took place.” The trial
court also found that no issue had been tried by consent of the parties. Ultimately,
however, the trial court found that Gulf States was entitled to $59,000, representing the
amount Gulf States paid to third-party contractors working on the Cody #1 and #2 wells. 
The court characterized this as “rescission damages because it would be inequitable for
Gulf States to have paid this money having not been able to fulfill the terms of the contract
to purchase the Cody Lease.” The court also found that Omega was entitled to recover
$14,108.96 from Gulf States, as damages incurred when Mitcham, acting as Gulf States’
agent, sold Omega’s on-site equipment at Cody #2 without Omega’s knowledge or
permission. 
          Omega appealed the decision to this court, arguing that the trial court erred in
entering judgment in favor of Gulf States. Specifically, Omega alleges (1) rescission was
not properly before the trial court and therefore could not be the basis for judgment; and
(2) had rescission been properly before the court, the trial court erred in concluding Gulf
States was entitled to rescission for workover expenses. Gulf States cross-appealed,
arguing that the trial court erred in finding that Omega did not breach the contract to
convey the Cody Lease to Gulf States. 
II. Rescission
A. Rescission as a Remedy
          We first address the issue of rescission as an unpled issue. Omega argues in its
first issue that because rescission had not been raised as an issue in the pleadings, Gulf
States could not raise it at trial, and the trial court could not base its judgment on
rescission. Gulf States argues in response that the damages awarded to it were based on
“funds expended on the real property,” and not on rescission. However, because the trial
court specifically and expressly noted that the damages were awarded on the basis of
rescission, and because Gulf States itself raised rescission in its closing arguments at the
trial, we disregard this argument and instead respond to Omega.
          A trial court may not grant relief to a party in the absence of pleadings to support
that relief. See Moreno v. Moore, 897 S.W.2d 439, 442 (Tex. App.–Corpus Christi 1995,
no writ); see also Tex. R. Civ. P. 301. However, Texas courts have traditionally construed
pleadings liberally, and in the case of rescission specifically, at least one court has held
that “factual allegations in the petition, coupled with a prayer for general relief, are sufficient
to support a decree granting rescission.” Green Tree Acceptance, Inc. v. Pierce, 768
S.W.2d 416, 420 (Tex. App.–Tyler 1989, no writ). Furthermore, when the claims and
defenses raised are those which contemplate a particular remedy, a party may be entitled
to that particular remedy despite a failure to specifically plead for such relief. See Perez
v. Briercroft Serv. Corp., 809 S.W.2d 216, 218 (Tex. 1991). 
          Gulf States did not specifically request that it be granted rescission as an equitable
remedy to Omega’s alleged breach of contract. However, Gulf States did assert claims for
damages based on fraud and violations of the Deceptive Trade Practices Act. Claims of
fraud, if substantiated, will serve to vitiate a contract; rescission is a proper remedy that can
be applied to a finding of fraud. See Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671,
676 (Tex. 2000). Rescission has also been found to be a proper remedy for claims based
on the Deceptive Trade Practices Act. See David McDavid Pontiac, Inc. v. Nix, 681
S.W.2d 831, 835-36 (Tex. App.–Dallas 1984, writ ref’d n.r.e.). Therefore, because the
claims raised by Gulf States in its pleadings could potentially be remedied by a judicial
rescission of the contract, see Perez, 809 S.W.2d at 218, we do not find that the trial court
improperly considered rescission as a remedy for Gulf States’ alleged injuries. Omega’s
first issue is accordingly overruled.
B. Propriety of Rescission-Based Damages
          By its second issue, Omega argues that the trial court erred and abused its
discretion in granting rescission damages to Gulf States. We have concluded that
rescission was available as a potential remedy; we now must determine whether the
granting of rescission was proper in these circumstances. 
          Rescission of a contract is an equitable remedy used as a substitute for monetary
damages when such damages would not be adequate. Scott v. Sebree, 986 S.W.2d 364,
368 (Tex. App.–Austin 1999, pet. denied). A plaintiff requesting rescission has the burden
to prove that she is deserving of equitable relief and that there is no adequate remedy at
law. Frost Bank v. Burge, 29 S.W.3d 580, 596 (Tex. App.–Houston [14th Dist.] 2000, no
pet.). A trial court must weigh several factors to determine if rescission should be granted,
including probability of irreparable damage to the moving party, possibility of harm to the
nonmoving party, and public interest. Davis v. Estridge, 85 S.W.3d 308, 310 (Tex.
App.–Tyler 2001, pet. denied). The trial court must also take into account equitable
principles; for example, in the context of property, before a buyer may rescind a contract,
she must give timely notice to the seller that the contract is being rescinded and must
either return or offer to return the property received and the value of any benefit derived
from its possession. Id. at 311 (citing David McDavid Pontiac, Inc. v. Nix, 681 S.W.2d 831,
836 (Tex. App.–Dallas 1984, writ. ref’d n.r.e.)). Generally a court will not enforce
contractual rights in equity, because a party can rarely establish an irreparable injury and
an inadequate legal remedy when damages for breach of contract are available. Butnaru
v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2005). 
          An appellate court reviews a judgment granting rescission for an abuse of discretion. 
See Davis, 85 S.W.3d at 310. If the trial court abuses its discretion in ordering rescission,
the resulting judgment must be reversed. Id. 
          Gulf States requested rescission because of its unilateral mistake regarding the
contents and effect of the contract - specifically, the June 1999 modification. In order to
be entitled to equitable relief on the grounds of unilateral mistake, a party must show (1)
the mistake is of so great a consequence that to enforce the contract as made would be
unconscionable; (2) the mistake relates to a material feature of the contract; (3) the
mistake must have been made regardless of the exercise of ordinary care; and (4) the
parties can be returned to status quo in the equity sense; i.e., rescission must not result
in prejudice to the other party except for the loss of his bargain. N. Nat’l Gas Co. v. Chisos
Joint Venture I, 142 S.W.3d 447, 456 (Tex. App.–El Paso 2004, no pet.). 
          At trial, Gulf States argued that the June 1999 contract modification was intended
to provide that upon the closing of the Stanford Agreement, Gulf States was entitled to
assume the Cody Lease without further payment to Omega. The trial court disagreed with
this interpretation but nonetheless acknowledged that Gulf States had spent substantial
amounts of time, effort and money in preparing the two Cody wells for production in
anticipation of acquiring the lease and accordingly granted damages in rescission.
          The June 1999 modification has no provision that would award Gulf States the Cody
Lease without further payment of the purchase price upon the successful closing of the
Stanford Agreement. At trial, Gulf States’ representative acknowledged that the
modification did not reflect his intent, implying that he signed the contract by mistake,
intending to agree to a different set of obligations. This mistake clearly relates to a material
feature of the contract, i.e., Gulf States’ obligation to pay the remainder of the purchase
price. These parties had an extensive history of dealing with each other and there was no
evidence that Gulf States failed to exercise ordinary care in these dealings. See id. at 456. 
The trial court’s order rescinding the contract attempted to place the parties back in status
quo by returning to each the property that would not have been expended or lost by either
party had there never been such a modification of the contract. While there was a lack of
direct evidence to show enforcement of the modification would be unconscionable, see id.,
we are limited by the abuse of discretion standard of review, and may only overrule the trial
court’s decision if no reasonable evidence supports it. See Butnaru, 84 S.W.3d at 211. 
          The evidence establishes that both parties attempted to enter into binding
contractual obligations and suffered from unmet expectations of those obligations, despite
partial performance. Thus, we conclude the trial court did not abuse its discretion in
rescinding the contract as some evidence does reasonably support its decision. See id. 
          We overrule Omega’s second issue on appeal, and affirm the judgment of the trial
court insofar as damages were granted on the basis of rescission. 
III. Gulf States’ Cross-Appeal
          Gulf States also filed its own cross-appeal, arguing that the trial court erred in finding
that no contract existed, and therefore Gulf States was not entitled to damages from the
breach of such contract. Gulf States argues on appeal that it is “undisputed” that the June
1999 modification “made the contract contingent on the sale of certain leases under the
‘Stanford Agreement,’ upon which [Gulf States] would owe no additional sums of money,
and assignments would be made to [Gulf States] from [Omega] for the Cody Leases.” 
Based on the existence of this “undisputed” contract, Gulf States insists it is entitled to
damages.
          Gulf States, however, failed to comply with the requirements of appellate briefs by
omitting a “clear and concise argument for the contentions made, with appropriate citations
to authorities and to the record” concerning this issue. Thus, Gulf States has waived its
right to our review of this issue. See Tex. R. App. P. 38.1(h); Sunnyside Feedyard v. Metro
Life Ins. Co., 106 S.W.3d 169, 173 (Tex. App.–Amarillo 2003, no pet.). 
          Furthermore, a party cannot recover damages by both rescinding the contract to
collect equitable damages and affirming the transaction to collect contract damages. See
Swink v. Alesi, 999 S.W.2d 107, 111 (Tex. App.–Houston [14th Dist.] 1999, no pet.);
Hendon v. Glover, 761 S.W.2d 120, 122 (Tex. App.–Beaumont 1988, writ denied). The
party must elect a single remedy, through either affirming or rescinding the transaction. 
See Swink, 999 S.W.2d at 111. Gulf States’ request for equitable remedies at trial,
coupled with its insistence upon the propriety of those damages on appeal, prevents us
from evaluating its claim for damages based on breach of contract. 
          Accordingly, we cannot consider Gulf States’ issue on appeal. Based on Gulf
States’ failure to comply with the rules of appellate procedure in briefing coupled with its
failure to properly elect a remedy, we overrule its issue on appeal. 
IV. Conclusion
          We overrule both Omega’s issues on appeal and Gulf States’ issue on cross-appeal. The judgment of the trial court is affirmed. 
                                             


                                                                                                                   
                                                                        Rogelio Valdez,
                                                                        Chief Justice

 

Memorandum Opinion delivered and filed
this 28th day of April, 2005.