NORTHERN NATURAL GAS COMPANY, A DIVISION OF ENRON CORP., Appellant,

v.

Fred S. VANDERBURG, Jr., Appellee.

No. 07–88–0204–CV.

Court of Appeals of Texas,
Amarillo.

Jan. 31, 1990.

John S. Irwin, Ham Irwin Graham & Cox, Amarillo, for appellant.

John W. Warner, Warner & Finney, Pampa, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

DODSON, Justice.

Northern Natural Gas Company, a division of Enron Corp., (Northern) appeals from the trial court's summary judgment rendered in favor of Fred S. Vanderburg, Jr. (Vanderburg) on his action for wrongfully withholding payments for production of gas produced from Vanderburg's property. The trial court awarded Vanderburg judgment for $44,719.42 plus pre- and post-judgment interest and attorney's fees. Northern attacks the judgment by nine points of error. We affirm.

The record shows that Vanderburg owns all of the surface and all of the oil, gas, and other minerals in and under Section 113, Block B–2, H & GN Ry. Co. Survey, Gray County, Texas. Vanderburg claims his interest as the successor to the interest of his grandparents, E.F. Vanderburg and wife, Nannie Ethel Vanderburg, by purchase and inheritance. By an instrument dated 4 February 1938, Vanderburg's grandparents as lessors, executed an oil and gas lease in favor of D.D. Harrington, as lessee. The lease provides:

4. The lessee shall pay lessor, as royalty, one-eighth of the *proceeds from the sale of the gas as such,* at the mouth of the well, for gas from wells where gas only is found. The lessor is to have gas free of charge from any gas well on the leased premises for stoves, and inside lights in the principal dwelling house on said land by making his own connections with the well, the use of said gas to be at the lessor's sole risk and expense. The *lessee shall pay to lessor for gas produced from any oil well and used by the lessee for the manufacture of gasoline,* or any other product, as royalty, one-eighth of the market value of such gas at the mount [sic] of the well. *If said gas is sold by the lessee, then as royalty one-eighth of the proceeds of the sale thereof at the mouth of the well.* (emphasis added)

It is undisputed that Vanderburg has succeeded to and owns the lessor's ⅛ royalty interest under the above oil and gas lease. Vanderburg's ownership of the royalty interest is not challenged in this cause of action or any other cause of action revealed by the record in this case.

Through mesne assignments of the oil and gas lease, Damson Oil Corporation, formerly Dorchester Gas Producing Co. (Damson) claims title to the gas rights under the lease. Vanderburg Exploration, Inc. (VEI), successor to Stowers Oil & Gas Co. (Stowers), and others, claim title to the oil and casinghead gas rights under the 1938 lease.

There are currently two purported oil wells located on the Southeast Quarter (SE/4) of Section 113, known as the Vandy No. 1 and Vandy No. 2 wells which are operated by VEI. Damson owns and operates a dry gas well on Section 113 and pays royalty to Vanderburg for the dry gas produced.

On 23 June 1980, Northern entered into a casinghead gas purchase contract (the contract) with Stowers as seller. The contract covered casinghead gas produced from all of the Southeast Quarter (SE/4) of Section 113, Block B–2, H & GN Ry. Co. Survey, Gray County, Texas, and was limited to the Granite Wash formation. Pursuant to the terms of the contract, Northern purchases from VEI 100% of the casinghead gas produced from the two wells operated by VEI and remits all payments to VEI. The contract provides that VEI will be responsible

for making payments to royalty owners entitled to the same.

As a result of two pending lawsuits instituted by Damson involving a dispute as to the ownership of the gas produced by VEI from the Southeast Quarter (SE/4) of Section 113 and delivered to Northern pursuant to the contract, Northern advised VEI that Damson was seeking a judicial determination of title and ownership of the gas produced and sold to Northern. Northern told VEI that it would be suspending payments pending resolution of the title dispute to the gas. Vanderburg has requested Northern to make payments of his royalty directly to him pending resolution of the title dispute between the other individuals claiming an interest other than his interest.

On 25 September 1986, Vanderburg instituted this suit against Northern and VEI. Vanderburg seeks to recover damages from Northern alleging that Northern is wrongfully withholding royalty payments due Vanderburg. Vanderburg alleges that there is no title dispute as to his royalty interest and that as a third-party beneficiary of the contract, he is entitled to damages from Northern. Vanderburg further pled that Northern converted his gas and that he is entitled to payment of his share of the proceeds from the sale of gas under Texas Natural Resources Code Annotated, sections 91.401–406 (Vernon Supp.1990) *

---

* All references to these code sections are to Texas Natural Resources Code Annotated, sections 91.401–406 (Vernon Supp.1990). The entire code sections are as follows:

§ 91.401.  Definitions

In this subchapter:

(1) "Payee" means any person or persons legally entitled to payment from the proceeds derived from the sale of oil or gas from an oil or gas well located in this state.

(2) "Payor" means the first purchaser of production of oil or gas from an oil or gas well, but the owner of the right to produce under an oil or gas lease or pooling order is deemed to be the payor if the owner of the right to produce and the first purchaser have entered into arrangements providing that the proceeds derived from the sale of oil or gas have been paid by the first purchaser to the owner who assumes the responsibility of paying those proceeds to the payee.

Added by Acts 1983, 68th Leg., p. 966, ch. 228, § 1, eff. Sept. 1, 1983.

§ 91.402.  Time for Payment of Proceeds

(a) The proceeds derived from the sale of oil or gas production from an oil or gas well must be paid to each payee on or before 120 days after the end of the month of first purchase by a payor. After that time, payments must be made to each payee on a timely basis according to the frequency of payment specified in a lease or other written agreement between payee and payor. If the lease or other agreement does not specify the time for payment, subsequent proceeds must be paid no later than:

(1) 60 days after the end of the calendar month in which subsequent oil production is sold; or

(2) 90 days after the end of the calendar month in which subsequent gas production is sold.

(b) Payments may be remitted to payees annually for the aggregate of up to 12 months' accumulation of proceeds, if the total amount owed is $25 or less.

Added by Acts 1983, 68th Leg., p. 966, ch. 288, § 1, eff. Sept. 1, 1983.

§ 91.403.  Payment of Interest on Late Payments

(a) If payment has not been made for any reason in the time limits specified in Section 91.402(a) of this code, the payor must pay interest to a payee beginning at the expiration of those time limits at the rate charged on loans to depository institutions by the New York Federal Reserve Bank, unless a different rate of interest is specified in a written agreement between payor and payee.

(b) Subsection (a) of this section does not apply where payments are withheld or suspended by a payor beyond the time limits specified in Section 91.402(a) of this code because there is:

(1) a dispute concerning title that would affect distribution of payments;

(2) a reasonable doubt that the payee does not have clear title to the interest in the proceeds of production; or

(3) a requirement in a title opinion that places in issue the title, identity, or whereabouts of the payee and that has not been satisfied by the payee after a reasonable request for curative information has been made by the payor.

(c) The payor's obligation to pay interest and the payee's right to receive interest under Subsection (a) of this section terminate on delivery of the proceeds and accumulated interest to the State Treasurer as provided by Title 6, Property Code (footnote omitted).

Added by Acts 1983, 68th Leg., p. 966, ch. 228, § 1, eff. Sept. 1, 1983.  Amended by Acts 1985, 69th Leg., ch. 230, § 18, eff. Sept. 1, 1985.

Historical Note

1985 Amendment.  Added subsec. (c).

§ 91.404.  Nonpayment of Oil and Gas Proceeds or Interest

(a) If a payee seeks relief for the failure of a payor to make timely payment of proceeds from

and Texas Natural Resources Code Annotated, section 111.089 (Vernon 1978). Vanderburg also requested prejudgment interest at the rate of 10% per annum compounded as provided by law on each unpaid payment beginning with the month of August 1983. Northern pled, as an affirmative defense, that Vanderburg's claim for prejudgment interest constituted usury.

Vanderburg filed a motion for summary judgment on his entire claim. Northern filed its response and its counter-motion for summary judgment claiming that it was entitled, as a matter of law, to a judgment that Vanderburg take nothing because of the existence of the title dispute which authorized Northern, pursuant to the terms and provisions of the contract, to withhold payments from VEI for gas produced from the Southeast Quarter (SE/4) of Section 113 and delivered to Northern.

The trial court granted Vanderburg's motion for summary judgment, denied the motion for summary judgment of Northern, and held as a matter of law that Vanderburg was entitled to damages in the amount of $44,719.42, equitable prejudgment interest on said sum at the rate of 10% per annum compounded daily from 24 February 1984, to the date of the judgment, attorney's fees and costs. The trial court further severed the claims against Northern from the other issues pending so that the judgment against Northern would become final.

Northern filed its motion for new trial alleging that the trial court erred in granting Vanderburg's motion for summary judgment and denying Northern's motion for summary judgment. Northern's motion for new trial was overruled on 1 August 1988, and this appeal was thereafter duly perfected.

By its first two points of error Northern claims the trial court erred: (1) by rendering summary judgment in favor of Vanderburg and holding as a matter of law that Vanderburg was entitled to damages from Northern for withholding proceeds from the sale of gas; and (2) by failing to render a take-nothing summary judgment in Northern's favor. Under these points of error Northern first contends that Vanderburg is not a third-party beneficiary of the contract between Northern and VEI. We agree. Nevertheless, that determination does not resolve the dispute in Northern's favor.

■ Among other things, Vanderburg's cause of action is brought under and comes within the ambits of sections 91.401–406. Those sections give a mineral interest owner a cause of action against a payor for the nonpayment of oil or gas proceeds, plus interest and attorney's fees.

the sale of oil or gas or an interest in oil or gas as required under Section 91.402 or 91.403 of this code, the payee must give the payor written notice by mail of that failure as a prerequisite to beginning judicial action against the payor for nonpayment.

(b) The payor has 30 days after receipt of the required notice from the payee in which to pay the proceeds due, or to respond by stating in writing a reasonable cause for nonpayment.

(c) A payee has a cause of action for nonpayment of oil or gas proceeds or interest on those proceeds as required in Section 91.402 or 91.403 of this code in any court of competent jurisdiction in the county in which the oil or gas well is located.
Added by Acts 1983, 68th Leg., p. 966, ch. 228, § 1, eff. Sept. 1, 1983.

§ 91.405. Exemptions

This subchapter does not apply to any royalties that are payable to:

(1) the board of regents of The University of Texas system under a lease of land dedicated to the permanent university fund; or

(2) the General Land Office as provided by Subchapter D, Chapter 52, of this code.
Added by Acts 1983, 68th Leg., p. 966, ch. 228, § 1, eff. Sept. 1, 1983.

§ 91.406. Attorney's Fees and Minimum Award

If a suit is filed to collect proceeds and interest under this subchapter, the court shall include in any final judgment in favor of the plaintiff an award of:

(1) reasonable attorney's fees; and

(2) if the actual damages to the plaintiff are less than $200, an additional amount so that the total amount of damages equals $200.
Added by Acts 1987, 70th Leg., ch. 1011, § 1, eff. Aug. 31, 1987.

Historical Note

1987 Legislation.

Section 2 of the 1987 Act provides: "This Act applies only to a suit filed on or after the effective date of this Act."

Northern contends that sections 96.401–406 are not applicable because Northern is not a payor and Vanderburg is not a payee as defined in section 96.401. We disagree. A payee is defined as any person "legally entitled to payment from the proceeds derived from the sale of oil or gas from an oil or gas well located in this state." In that regard it is undisputed that Vanderburg is the legal owner of the lessor's ⅛ royalty under the oil and gas lease on the property in question. We reiterate, Vanderburg's ownership of that interest is not challenged in this or any other pending action revealed by the record before us.

With an exception, section 91.401(2) defines a payor as the "first purchaser of production of oil or gas from an oil or gas well...." In that regard, it is uncontroverted that Northern is the first purchaser of the production of the gas from the wells in question.

Nevertheless, Northern claims the benefit of the exception provided by section 91.401(2). The exception provides that:

> [T]he owner of the right to produce under an oil or gas lease or pooling order is deemed to be the payor *if the owner of the right* to produce and the first purchaser have entered into arrangements providing that the proceeds derived from the sale of oil or gas have been paid by the first purchaser to the owner who assumes the responsibility of paying those proceeds to the payee. (emphasis added)

For the exception to apply there must be: (1) a contract between the owner of the right to produce (*i.e.*, VEI) and the first purchaser (*i.e.*, Northern); (2) payment of proceeds derived from the sale of oil or gas by the first purchaser to the owner of the right to produce; and (3) the assumption of the responsibility to pay the proceeds to the payee by the owner of the right to produce.

Even if we assume, arguendo, the first and third conditions of the exception are met, the second requirement has not been met. Northern as a first purchaser has not paid the proceeds from the sale of the gas to VEI, the owner of the right to produce. Consequently, Northern is a payor under

the definition and is not entitled to the benefits of the exception.

■ Under the first two points of error Northern further contends that it did not unreasonably delay payment in violation of Section 111.089 of the Texas Natural Resources Code Annotated (Vernon 1978) because the contract between Northern and VEI authorizes Northern to withhold proceeds from the sale of gas in the event of a title dispute.

This contention misses the mark for several reasons. First, Vanderburg is not a party to or a beneficiary of the contract, and he is not bound by that contract. Second, Vanderburg's title is not in dispute. Third, section 111.089 is not applicable to Vanderburg's cause under sections 91.401–406. Last, the evidence shows that Vanderburg's payments were delayed four years, which is a time well beyond the periods specified in sections 91.402(a)(1) and (2) (*i.e.*, 60 and 90 days, respectively).

■ For the above reasons we overrule Northern's first and second points of error.

Northern's third and fourth points of error read:

*Point of Error No. 3*

Alternatively, in the event the trial court was correct in holding as a matter of law that Vanderburg was entitled to damages from Northern for withholding proceeds from the sale of gas, the trial court erred in holding as a matter of law that Vanderburg was entitled to recover the sum of $44,719.42.

*Point of Error No. 4*

Alternatively, in the event the trial court was correct in holding as a matter of law that Vanderburg was entitled to damages from Northern for withholding proceeds from the sale of the gas, the trial court erred in not holding as a matter of law that Vanderburg's damages were to be determined in accordance with the Federal Energy Regulatory Commission's determination in Stowers Oil & Gas Co., et al., Docket No. GP84–23–027.

Under these points of error, Northern argues that Vanderburg is not entitled to the sum of $44,719.42 in damages from appel-

lant for withholding proceeds from the sale of gas because the proper amount to be paid for gas produced from the property in question is subject to determination by the Federal Energy Regulatory Commission.

The purchase price of the gas in question was $357,755.53. Vanderburg was entitled to ⅛ of that amount (*i.e.*, $44,719.42). However, Northern claims it does not have to pay Vanderburg's share of the proceeds because the price of the gas has not been finally determined in Stowers Oil & Gas Co., et al., Docket No. GP84-23-027, pending before the Federal Energy Regulatory Commission.

There is nothing in the record to show that Vanderburg was or is a proper party to the *Stowers* action. Likewise, in the trial court, Northern did not file a motion requesting that this action be abated until the *Stowers* action became final. Consequently, that matter is not properly before this court. Nevertheless, the pending price action does not preclude Vanderburg's action against Northern. Northern's third and fourth points of error are overruled.

Northern's fifth and sixth points of error read:

*Point of Error No. 5*

Alternatively, in the event the trial court was correct in holding as a matter of law that Vanderburg was entitled to damages from Northern for withholding proceeds from the sale of gas, the trial court erred in holding as a matter of law that Vanderburg was entitled to attorney's fees.

*Point of Error No. 6*

Alternatively, in the event the trial court was correct in holding as a matter of law that Vanderburg was entitled to damages from Northern for withholding proceeds from the sale of gas, the trial court erred in not holding as a matter of law that Vanderburg was not entitled to attorney's fees.

Section 91.406 specifically authorizes "reasonable attorney's fees" in this action. The parties stipulated as to the reasonableness of the fees awarded. Northern's fifth and sixth points are overruled.

Northern's seventh, eighth, and ninth points of error read:

*Point of Error No. 7*

Alternatively, in the event the trial court was correct in holding as a matter of law that Vanderburg was entitled to damages from Northern for withholding proceeds from the sale of gas, the trial court erred in holding as a matter of law that Vanderburg was entitled to equitable pre-judgment interest at the rate of 10% per annum compounded daily from February 25, 1984, to the date of judgment.

*Point of Error No. 8*

Alternatively, in the event the trial court was correct in holding as a matter of law that Vanderburg was entitled to damages from Northern for withholding proceeds from the sale of gas, the trial court erred in not holding as a matter of law that Vanderburg was entitled to pre-judgment interest at the rate of 6% per annum under Article 5069-1.03 V.A.T.S.

*Point of Error No. 9*

Alternatively, in the event the trial court was correct in holding that Vanderburg was entitled to damages from Northern for withholding proceeds from the sale of gas, the trial court erred in not holding as a matter of law that Vanderburg charged pre-judgment interest to Northern at a usurious rate.

Under these points of error, Northern, in essence, claims that Vanderburg's damages were ascertainable under article 5069-1.03, at 6% per annum, that the 6% rate under article 5069-1.03 is the proper rate, and that by pleading for 10% per annum Vanderburg charged a usurious interest rate. We disagree.

The 6% rate from article 5069-1.03 is not applicable to Vanderburg's cause of action under sections 91.401-406. Section 91.403 provides for interest and prescribes the rate. In this instance Northern does not claim that the interest rate stated in the judgment fails to conform to the rate prescribed by section 91.403. Consequently, there is nothing further for review. Northern's seventh, eighth, and ninth points of error are overruled.

By one cross-point Vanderburg alleges that the Court of Appeals should affirm the trial court's judgment against InterNorth, Inc. and Enron Corp. and sever Vanderburg's action against them from this cause since they have not appealed from the trial court's judgment. We disagree. All three named entities are one and the same corporation.

The record shows and it is undisputed that Northern Natural Gas Company became a division of InterNorth, Inc. on 28 March 1980, InterNorth, Inc.'s name was changed to Enron Corp. on 10 April 1986, and that Enron Corp. is licensed to do business in Texas. The trial court found that Enron Corp. was formerly known as InterNorth, Inc.

As a matter of law a corporate name change does not affect its identity, property rights, or liabilities. *Nelson v. Detroit & Security Trust Co.*, 56 S.W.2d 860, 862 (Tex.Comm'n.App.1933). "A division of a corporation is not a separate legal entity but is the corporation itself." *Western Beef, Inc. v. Compton Inv. Co.*, 611 F.2d 587, 591 (5th Cir.1980).

For the above reasons, a suit answered and defended by Northern Natural Gas Company, a division of Enron Corp., is also a suit answered and defended for Inter-North, Inc. and Enron Corp. An appeal of this case by Northern Natural Gas Company, a division of Enron Corp., is in effect an appeal on behalf of Enron Corp. and Inter-North, Inc. since Northern has no separate legal existence from Enron Corp. Vanderburg's cross-point is overruled.

In sum, Northern's nine points of error and Vanderburg's cross-point are overruled and the trial court's judgment is affirmed.