**MATSUSHITA ELECTRIC CORPORA-
TION OF AMERICA, Appellant,**

v.

**McALLEN COPY DATA, INC. and
John Smith, Appellees.**

No. 13–90–209–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1991.

Rehearing Overruled Oct. 3, 1991.

Mark D. Manela, William J. Dyer, Morton L. Susman, Weil, Gotshal & Manges, Houston, George Almaraz, Almaraz, Quintana & Canales, McAllen, for appellant.

H. Harman Camp, James D. Selman, III, Selman & Camp, Neil Norquest, Keith C. Livesay, Frank Rodriguez, McAllen, for appellees.

Before SEERDEN, KENNEDY and DORSEY, JJ.

## OPINION

SEERDEN, Justice.

This is an appeal from a default judgment granted in favor of appellees McAllen Copy Data, Inc., and John Smith and against Matsushita Electric Corporation of America (MECA). We reverse and remand the case for a trial on the merits.

A procedural history of the case is necessary to understand our disposition. Appellees, McAllen Copy Data, Inc., and John Smith (Copy Data), sued Gary Everett, Panasonic Company (PC), Panasonic Industrial Company (PIC), and Matsushita Electric Corporation of America (MECA), based upon the termination of a dealership agreement between Copy Data and the Panasonic group. Copy Data alleged numerous false and misleading acts. On January 3, 1989, a general denial was filed in the name of Panasonic Industrial Company, Division of Matsushita Electric Corporation of America ("Panasonic"). Below the attorney's signature line on the answer were the words "Attorneys for Defendants Panasonic Industrial Company, Panasonic Company, Matsushita Electric Corporation of America and Gary Everett", although the body of the answer did not purport to be filed by all of the defendants in the case. Rather, it appeared to be filed by only PIC, a division of MECA. On January 4, 1989, Copy Data took an interlocutory default judgment for $1,000,000.00 against defendants PC and MECA. The Panasonic Group (MECA, PIC and PC), filed a petition for removal to federal court on January 6, 1989. In their petition for removal they alleged that at the time of removal only PIC had been served. They claimed that Gary Everett had been fraudulently joined in the state lawsuit to defeat the federal court's jurisdiction. They also asserted that PIC and PC were divisions of MECA. MECA and PC filed answers in the state court on January 9, 1989, after the default had already been taken against them without their knowledge. The Panasonic Group

filed an amended answer in federal court. The case was remanded to state court on June 23, 1989.

Copy Data then filed its Motion for Severance, Sanctions and Final Default Judgment on August 1, 1989. MECA filed a motion to set aside that interlocutory default judgment. After a hearing, the trial court denied MECA's motion, granted Copy Data's motion for severance and awarded sanctions, finding that MECA had abused the discovery process. The trial court did not strike any of MECA's pleadings, however. Both sides present to this court opposite views of the trial court's actions. MECA argues that the trial court's actions amounted to an improper default judgment on the theory that as a matter of law the parties had answered, there were several defects in the service of citation, and there was improper notice of the default judgment. Copy Data views the granting of the default judgment as a sanction. The difference is crucial, because if MECA's view is correct, we review the case based on whether the default should have been granted. If Copy Data is correct, the test is whether the trial court abused its discretion in granting the sanction that it did. It is difficult to determine which side is correct because the trial court made several inconsistent statements which at one point reflect that it was affirming the default as a sanction and at another point refusing to strike the pleadings and granting attorney's fees as a sanction. We look to the judgment and the complete record of the hearings for our determination of what actually happened in this case.

The judgment contains specific findings which relate to the questions at hand. They are:

1. The Court found that the Original Answer filed on behalf of defendant PIC was not intended to constitute an answer on behalf of MECA and PC, and did not constitute an answer on behalf of MECA or PC.

2. The Court found that MECA intentionally maintained the position that PIC, PC, and MECA were separate legal entities before the trial court, and the Federal Court, and that such was maintained for the purpose of complicating the case.

3. The Court found that MECA had engaged in a consistent, conscious, and flagrant pattern of bad faith discovery abuse by:

a. noticing counsel for deposition on short notice and refusing to reschedule.

b. failing to attend a scheduled deposition without notice of cancellation.

c. making spurious objections to discovery.

d. failing to properly answer discovery instruments after two voluntary extensions.

e. failing to file verified answers to interrogatories after extensions were voluntarily given.

After these specific findings, the court ordered that MECA pay Copy Data $1,000,-000.00, plus attorney's fees. The Court also decreed that none of the defendants' pleadings were struck.

By its first point, MECA argues that the trial court erred in not granting the motion to set aside the default judgment because MECA answered prior to the entry of the interlocutory default. It argues that the uncontroverted evidence shows that PIC and PC are assumed names of the operating divisions of MECA. Because one of the operating divisions answered, this constituted an answer for all. The answer was filed by PIC, *a division of Matsushita Electric Corporation of America.* The issue then is whether this answer was in fact, an answer on behalf of MECA. If so, the trial court improperly granted the default.

 Texas law provides that when a plaintiff's cause of action should have been brought against a separate and distinct corporate entity other than the one sued, there is no misnomer. Rather, there is a mistake in identity, and the wrong party is under no obligation to correct that mistake. *Trailways, Inc. v. Clark,* 794 S.W.2d 479, 489 (Tex.App.—Corpus Christi 1990, writ denied). On the other hand, if a party is complaining that it has been sued in the wrong capacity or is not incorporated as

alleged, it would have to raise that defense in a verified pleading in accordance with Tex.R.Civ.P. 93. Texas law also recognizes that legal action taken in the name of a division is legal action taken for the corporation. *Northern Natural Gas. Corp. v. Vanderburg,* 785 S.W.2d 415 (Tex.App.—Amarillo 1990, no writ). In *Vanderburg,* the court held that a division of a corporation is not a separate legal entity but is the corporation itself. *Id.* at 421. The court also said that a suit answered and defended by a division is also a suit answered and defended for the corporation. Additionally, when a division's name is also an assumed name of the corporation, the corporation may sue and be sued in the assumed name. *See* Tex.R.Civ.P. 28.

■ Here, the answer was in the name of one of the divisions of MECA. We hold that the answer on behalf of the division was an answer on behalf of MECA, the corporation. Copy Data argues that MECA is estopped from claiming it answered because it did not file a verified denial under Tex.R.Civ.P. 93. We cannot see how the failure to file a verified denial in this case matters because MECA actually answered the lawsuit. A verified denial would have been proper if MECA was claiming that it had not been sued in the proper capacity or was not incorporated as alleged. We hold that the trial court erred in finding that MECA was estopped from claiming that it had failed to answer the original lawsuit. The answer of the division was, in fact, an answer for the corporation. We sustain point one.

■ By point three, MECA alleges that the trial court erred in granting the default judgment because no notice of the default judgment hearing was given to MECA or its counsel of record.

■ An application to the court for an order and notice of any hearing, not presented during a hearing or a trial, shall be served upon the adverse party not less than three days before the time specified for the hearing, unless otherwise provided by the rules or shortened by the court. Tex.R.Civ.P. 21. When a party has made an appearance through counsel the rules provide that notice of all hearings must be provided. A defendant who does not receive notice of a default judgment proceeding is deprived of due process. *LBL Oil Co. v. International Power Serv., Inc.,* 777 S.W.2d 390, 391 (Tex.1989). The record in this case established that MECA had no actual notice of the hearing on motion for default judgment, which effectively disposed of its case. We sustain MECA's third point.

By its ninth point of error, MECA argues that the discovery sanctions ordered do not support the trial court's refusal to set aside the default judgment. We will review the hearings that took place to determine what the trial judge did. On August 1, 1989, Copy Data filed a motion for severance, sanctions and final default judgment. The motion included a claim that MECA had committed discovery abuses primarily occurring after the interlocutory default. The motion requested an order striking MECA's pleadings as a discovery sanction. The trial court held two separate hearings on these questions. At the first hearing, on November 20, 1989, the parties agreed that the trial court would hear MECA's motion to set aside the interlocutory default. At that hearing, the judge stated that he had time to hear the motion for severance but that he did not have time to hear the motion for sanctions. After argument in the first hearing, the judge said that he was ruling that the motion to set aside the default judgment was denied, the motion to sever would be granted and that the parties would need to get another setting on the other motions. At this time, the trial court had upheld the no answer default judgment and determined to make it into a severable and final judgment. There was no indication in this hearing that the trial court was granting the final default because of discovery abuse. It appeared more likely that the trial court believed that MECA had not answered the lawsuit and the failure to answer was purposeful. This is more in line with the notion that the failure to answer the lawsuit was based on the conscious indifference of MECA. *See Craddock v. Sunshine Bus*

*Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939). However, we determined in an earlier point of error that MECA had answered the lawsuit.

On January 30, 1990, the trial court held a sanctions hearing. In that hearing, Copy Data asked that MECA's pleadings be stricken and that default be ordered for discovery abuse. The trial court responded:

> The request by plaintiffs on the motion for sanctions, asking that the defendant's pleadings be stricken and the answers be stricken for discovery abuse is going to be denied. However, the Court does find that there has been some discovery abuse by the defendants, the Court doesn't feel that the sanction of striking the pleadings is appropriate at this time. The Court does find, however, that a sanction against the defendants for attorney's fees will be granted.

Copy Data requested that the Court grant them $12,000.00 in attorney's fees. Instead, the trial court gave them $3,500.00. Later in the hearing the trial court said that even if the trial court found that some discovery abuses were made, he did not feel that it was so abusive that he would strike MECA's pleadings. Later in the hearing, the trial court indicated that it had already granted the default judgment and it had been or would be severed and appealed.

However, when the hearing was about to end, Copy Data's attorney said that his requests for default and sanctions were part of one motion. He indicated that Copy Data had asked for the entry of a default judgment based upon the prior interlocutory default judgment *and* all the "rest of the stuff that's going on, and then additionally in the alternative—and that's the way our motion was couched—we asked for the striking of the pleadings as well." He further argued that he understood the court's ruling to mean that the court was satisfied with the interlocutory judgment it had entered, that it had heard evidence about what had gone on in federal court (although no actual testimonial evidence was presented at either hearing), and that

the court was simply awarding the $3,500.00 and upholding the default. MECA's attorney responded that he understood that the court determined that the proper remedy for discovery abuse was $3,500.00 award. The court responded that MECA's attorney was incorrect. The court indicated that it was going to go along with what Copy Data's attorney had said earlier considering "everything on the part of the rulings made by the court previously."

It appears to us that the trial court allowed the default judgment to stand because it believed that MECA had consciously determined not to answer the lawsuit. There is no showing that the trial court allowed the default to stand because of discovery abuse. The trial court specifically decided *not* to strike the parties' pleadings as a sanction. The trial court awarded one-fourth of the requested amount of fees to Copy Data. The final order decrees that no pleadings were stricken.

■ The Supreme Court has recently determined that the test for determining whether sanctions are just is two-pronged. First, a direct relationship must exist between the offensive conduct and the sanction imposed. *Transamerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (1991). Second, a sanction must be no more severe than necessary to satisfy a legitimate purpose. Discovery sanctions cannot be used to adjudicate the merits of a party's claim or defense unless a party's hindrance of the discovery process justifies a presumption that its claim or defense lacks merit. *Id.* Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or callous disregard for the responsibilities of discovery under the rules. The imposition of very severe sanctions is limited, not only by these standards, but by constitutional due process.

■ The entry of a default judgment as a sanction is the most devastating form of sanction that the trial court can impose. Before we, as an appellate court, can review the trial court's discretion in granting such a sanction, the record should clearly

reflect that the trial court is, in fact, entering a default judgment as a discovery sanction. The record in this case is equivocal. It would be improper for us to uphold the default judgment as a sanction in the face of the many inconsistent statements which appear in the record.

We hold that the trial court erred in granting the default judgment. The judgment of the trial court is reversed and remanded.