**KOCH OIL COMPANY and Tesoro Crude Oil Company, Appellants,**

v.

**B.E. WILBER, Individually and as Representative of a Certified Class of Plaintiffs, Appellees.**

No. 09–92–224 CV.

Court of Appeals of Texas, Beaumont.

March 16, 1995.

David B. Hurst, Caldwell & Hurst, Mary–Ann A. Bellatti, Sheinfeld, Maley & Kay, J. Philip Griffis-Hays, McConn, Rice & Pickering, Houston, David J. Fisher, Orgain, Bell & Tucker, Beaumont, for appellants.

John Zukowski, Campbell, Zukowski & Bresenhan, Chris E. Ryman, Coats, Rose, Yale, Holm, Ryman, Houston, for appellees.

Before WALKER, C.J., and BURGESS and BROOKSHIRE [1], JJ.

## OPINION

BURGESS, Justice.

Appellants, Tesoro Crude Oil Company (Tesoro) and Koch Oil Company (Koch), filed this appeal from a judgment in the amount of $125,488.36 against International Petroleum Corporation (International) and United Texas Petroleum Corporation (United) renamed Clamont Energy Corporation (Clamont), jointly and severally; $30,093.61 against Koch; $24,653.54 against Tesoro; and attorney's fees against all defendants in the trial court jointly and severally in the amount of $186,315.08, plus $25,000 if the matter is appealed to the Court of Appeals, $5,000 if a writ of error to the Supreme Court is sought, and an additional $5,000 if the writ is granted. It is from this judgment that Tesoro and Koch have filed their appeal. Trial was before the court. The trial court entered its findings of fact and conclusions of law on June 25, 1992. Additional findings of fact and conclusions of law pertaining to Koch and separate findings of fact and conclusions of law relating to Tesoro, were each filed on July 14, 1992.

---

1. Justice, Retired, Court of Appeals, Beaumont, sitting by assignment pursuant to Tex.Gov't Code Ann § 74.003(b) (Vernon 1988).

On August 9, 1967, lessors, B.E. Wilber and wife Maxine Wilber, Helen A. Gephart, and Luella Gephart Myers, joined by her husband Charles S. Myers, executed an oil, gas and mineral lease on a 320 acre tract of land in Jefferson County, Texas, in favor of Walter Van Norman, D.M. Wallace and John F. Merrick. This lease contained a three year primary term and would continue as long thereafter as oil, gas, or other minerals were produced in paying quantities. B.E. Wilber subsequently assigned one-half (½) of his ownership interest in said lease to C.C. Wilber. By 1980, through various mesne assignments, lessors jointly conveyed royalty interests to 82 total royalty interest owners. These six named individuals, as plaintiffs, originally filed suit on October 8, 1986, against International and United.

In 1970, the lease was assigned by lessees to Goodale, Bertman & Company, Inc. On May 24, 1984, all the working interest in said lease was assigned to International.[2] At the time of this assignment, the Permian Corporation was the designated oil gatherer on the lease. International became the designated operator.

### Statement of Facts—Tesoro

Shortly after International began operating the lease, International changed the lease name from "Helen Gephart" to "Sharon Renee" effective July 1, 1984, and identified Tesoro as the oil gatherer. Tesoro initially set their accounts to pay all interest owners directly.

On June 21, 1984, Tesoro requested International provide a Division Order Title Opinion which would identify the various royalty owners, but International failed to provide Tesoro with such title opinion. In response to International's request on September 14, 1984, Tesoro began making the total payment to the operator.

Tesoro gathered oil from the lease on four separate occasions: August 1984, October 1984, December 1984, and March 1985, and paid 100 percent of the proceeds to International for the August 1984 and October 1984 purchases.

Before Tesoro paid for any oil gathered from the lease, International executed an Indemnifying Oil and Liquid Hydrocarbon Division Order. By execution of this division order, International agreed to make accurate and timely distribution of proceeds to all interest owners and agreed to indemnify Tesoro from any liability for such distribution of proceeds. Testimony established that such division orders are typical in the oil industry.

On December 12, 1984, Attorney Charles Thanheiser demanded Tesoro suspend payments for oil from the lease, and stated in a letter:

> Messrs. Van Norman and Wilber and others representing a majority of the royalties payable under captioned lease have elected not to have monies due them for the sale of oil and other liquids produced disbursed by or through International Petroleum Corporation and/or Mr. Lance Dreyer.

> There have been no royalties received since the change of ownership some months ago and the apparent termination of the contract with the former purchaser, Permian.

> We request that you suspend all payments off of this lease until the matter is resolved. Insofar as we are aware, this operator has no authority from any of the royalty owners to receipt for their funds.

Tesoro received Mr. Thanheiser's letter on December 18, 1984, and suspended the remaining payments for C.C. Wilber, Betty Wilber, Benny E. Wilber and Walter Van Norman (who subsequently settled his claim). All remaining funds were credited or paid to International. The record reflects that the original plaintiffs were aware as early as December 12, 1984, that no royalty payments were being received.

**2.** Mr. Lance Dreyer was president of International, United and Clamont. United was incorporated by Dreyer on December 5, 1984, and amended its articles in 1987, to change its name to United Texas Corporation and in 1988 to Clamont Energy Corporation. Clamont filed a petition in bankruptcy September 6, 1989, in the United States Bankruptcy Court for the Eastern District of Texas, Beaumont Division, Case No. 89–11943.

On January 18, 1985, an analyst from Tesoro called Mr. Dreyer at International and informed him about the communications with Mr. Thanheiser. On January 22, 1985, Mr. Dreyer signed an affidavit in which he swore that he possessed signed division orders from persons who owned royalty interests. Tesoro discovered later that this affidavit was false.

On March 8, 1985, Tesoro sent an amended division order to Mr. Thanheiser for C.C. Wilber, Betty Wilber and Bennie E. Wilber to execute. B.E. (Benny) Wilber refused to sign the order because it did not include and specify the interests of his ex-wife Maxine Wilber, Mr. and Mrs. Charles Myers, and Helen Gephart.

On March 19, 1985, Mrs. Maxine Wilber, Benny Wilber's ex-wife, mailed a letter to Tesoro and informed them that she had not signed division orders from International. On March 25, 1985, LeRoy McCall, Jr., informed Tesoro by letter that he had not signed a division order with International. A notation on this letter dated March 29, 1985, shows that the Tesoro analyst agreed to suspend International's proceeds and to request a title opinion. On March 25, 1985, Luella Gephart Myers, Charles S. Myers, and Helen A. Gephart notified Tesoro that they had not signed a division order from International nor did they intend to do so. During March 1985, Tesoro gathered its last shipment of oil from the lease. On April 9, 1985, Tesoro informed International they were suspending payment to International because of complaint letters from interest owners. All proceeds for the March 1985 gathering were suspended by Tesoro. Tesoro then requested a title opinion from International so that Tesoro could circulate division orders to the appropriate interest owners, but none was forthcoming.

### Statement of Facts—Koch

While International was the operator, Koch contracted with United to buy oil from several leases, including the Gephart/Sharon Renee lease. On May 6, 1985, United executed and delivered a Division Order to Koch. In that document, United guaranteed and warranted that it was the legal owner of all the oil produced from the United Texas Petroleum Company Sharon Renee Farm. During this period of time, and until April 1, 1986, International owned the working interest in, and operated the lease.

On May 7, 1985, Koch entered into a purchase agreement with United effective April 1, 1985 to May 1, 1985, and continuing month to month and thereafter until cancelled by either party with 30 days notice. Koch purchased all the crude oil produced from the subject lease from May of 1985 through August of 1986. By this agreement Koch was required to pay United 100 percent of the purchase price for all oil. The "Special Provisions" section of the agreement states that "Koch Oil Company will be the second purchaser at the lease."

On April 1, 1986, United became operator. Although these two companies (United and International) produced oil from the lease, they never paid the interest owners the royalties owed from that production.

A division order also contained United's acknowledgment that United, not Koch, was the "First Purchaser" of oil from the lease. This dovetailed with the Purchase Agreement which noted that Koch was the "Second Purchaser", but there was no "hold harmless" clause nor any indemnification language in either instrument. The warranty clause was directed to "first purchaser."

Koch made ten (10) separate purchases of oil from United between May 1985 and August 1986. It is undisputed that Koch paid United one hundred percent (100%) of the purchase price for every barrel of oil it bought. Koch never undertook to make payments to any royalty interest owners.

On September 2, 1987, United changed its name to United Texas Company, and then on January 7, 1988, from United Texas Corporation to Clamont Energy Corporation. After April 1987, Ada Crude Oil Company (a settling co-defendant) purchased the oil production from the subject lease.

### Litigation History

The original lessors filed suit on October 8, 1986, alleging a failure by International and United to pay royalties for oil produced from

the lease. Tesoro and Koch, purchasers from International and United, respectively, were joined as Defendants by Plaintiffs' Second Amended Petition filed on March 14, 1989.

Plaintiffs alleged their right to recovery under theories of express and quasi-contract and under TEX.NAT.RES.CODE ANN. § 91.401–91.406 (Vernon 1987). Plaintiffs' Petition further requested a declaratory judgment and asserted their alleged right to a security interest in the oil and its proceeds pursuant to TEX.BUS. & COM.CODE § 9.319 (Vernon 1991).

On February 12, 1990, Plaintiffs filed a suggestion of bankruptcy of Defendant Clamont (formerly United).

On June 15, 1990, Plaintiffs filed their Third Amended Original Petition in which B.E. Wilber alleged he was bringing suit both individually and as representative of the class of mineral and royalty interest owners in the subject lease.

The trial court, on September 17, 1990, certified a class of Plaintiffs consisting of the original plaintiffs and the remaining royalty interest owners in the lease. The case was tried to the Court during April 1992. The Court entered its judgment against appellants on June 5, 1992.[3] The judgment did not specify the grounds of recovery on which it was based, except as noted in the findings of fact and conclusions of law as filed.

### Standards of Review

For a brief analysis of standards of review we note at the outset that findings of fact in a case tried to the court, as is the case before us, have the same force and dignity as a jury's verdict upon special issues. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). When a complete statement of facts is filed in the appellate

record, as in the case before us, then such findings of fact by the trial court are not conclusive. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42 (Tex.App.—Houston [14th Dist.] 1985), *writ refused per curiam*, 699 S.W.2d 199 (Tex.1985). Findings of fact by the trial court are always reviewable for legal and factual sufficiency of the evidence. *See Middleton*, 687 S.W.2d at 44. However, if there is evidence of probative force to support such findings, they are controlling. *Mercer v. Bludworth*, 715 S.W.2d 693 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

In reviewing the legal sufficiency of evidence or a "no evidence" point, we consider only the evidence and inferences tending to support the court's findings and we will disregard anything to the contrary. *Best v. Ryan Auto Group Inc.*, 786 S.W.2d 670 (Tex. 1990). If there is any evidence of probative force to support such findings, they will be upheld. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666 (Tex. 1989).

When the appellant complains of factually insufficient evidence, we will review all the evidence to determine if the weight of the record supports the findings of the trial court. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442 (Tex.1989).

"No evidence" points will be sustained if the record demonstrates any one of the following: 1) a complete absence of evidence of a vital fact; 2) the court is barred by rules of law or of evidence from giving weight to the only evidence afforded to prove a vital fact; 3) the evidence offered to prove a vital fact is no more than a mere scintilla; or 4) the evidence establishes conclusively the opposite of a vital fact. Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361, 362–63 (1960). A factual sufficiency chal-

---

**3.** Apparently the trial court assessed damages by incorporating Plaintiffs' expert's calculations. Plaintiffs' expert identified the value for royalties on Tesoro's four purchases. This expert then allocated a $200 minimum award for each class member whose royalty share did not equal or exceed $200, even though many shares totaled less than one dollar. This expert made no at-

tempt to establish who owned certain percentages in 1984 or 1985, nor did the witness allow Tesoro any credit for proceeds which were paid to International pursuant to the indemnifying division order. Based upon this expert's assumptions, Tesoro owed the class members $24,-653.54. A similar accounting method was performed on amounts received by Koch.

lenge will only be sustained if the court determines that the finding of a vital fact by the trial court is so contrary to the great weight and preponderance of the evidence that it is found to be clearly wrong and unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ In determining the issues on appeal regarding burden of proof in the trial court, an appellant who challenges the legal sufficiency of evidence supporting an issue in which the appellant did not have the burden of proof must demonstrate that there was no evidence to support the appellees' finding. *Westech Eng. v. Clearwater Constructors*, 835 S.W.2d 190 (Tex.App.—Austin 1992, no writ).

■ If the appellant challenges the factual sufficiency of evidence supporting an adverse finding and the appellant did not have the burden of proof, then the appellant must demonstrate that there was insufficient evidence to support the adverse finding. *Raw Hide Oil & Gas v. Maxus Exploration*, 766 S.W.2d 264 (Tex.App.—Amarillo 1988, writ denied).

■ In the case in which the appellant has the burden of proof in the trial court, an attack on the legal sufficiency of a finding must demonstrate that the evidence conclusively establishes all vital facts in support of the issue. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686 (Tex.1989). If appellant has the burden of proof and is attacking the factual insufficiency, he must establish that the adverse finding is against the great weight and preponderance of the evidence. *Cain v. Bain*, 709 S.W.2d 175 (Tex.1986); *Raw Hide*, 766 S.W.2d at 275.

■ If the evidence supports the finding of fact, the appellate court then reviews the conclusions of law to determine their correctness. *Polland & Cook v. Lehmann*, 832 S.W.2d 729 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *NCL Studs, Inc. v. Jandl*, 792 S.W.2d 182 (Tex.App.—Houston [1st Dist.] 1990, writ denied). The conclusions of law drawn by the trial court are always reviewable as a matter of law. *Enterprise–Laredo Associates, Inc. v. Hachar's, Inc.*, 839 S.W.2d 822 (Tex.App.—San Antonio 1992), *writ denied per curiam*, 843 S.W.2d 476 (Tex.1992).

### Points of Error

Appellant, Tesoro, brings 30 points of error on appeal. Koch brings 33.

Tesoro's first five points of error relate to statute of limitations issues. Certain findings of fact by the court are attacked, to wit: 1) none of the appellees were ever notified of any change in ownership or operatorship, (and no appellees received any notice from International or Tesoro regarding any change of purchasers); 2) Tesoro did not notify any appellees of its decision to suspend payments of proceeds and they did not so learn until after April 9, 1985, (which was found by the court to be a reasonable time for such discovery); 3) appellees, other than the six original plaintiffs, did not know of payments withheld by Tesoro and Koch until they were certified as a class on September 17, 1990, which the trial court found to be a reasonable time for their discovery; 4) appellees' cause of action is not barred by the four year statute of limitations (also asserted by Koch in its first point of error), and 5) the original petition alleged enough facts to give notice to the defendants (appellants) of the possibility of a class wide action.

Tesoro and Koch (in its second and third points of error) challenge the conclusions of law by the trial court, to wit: 1) the discovery rule applies regarding plaintiffs' (appellees') cause of action against Tesoro and Koch, and 2) the third amended petition including the certified class of (seventy-six) plaintiffs related back to the first petition filed by the original (six) plaintiffs. Tesoro and Koch allege that: 1) the trial court erred in not barring all claims brought by appellees on the basis of Tesoro having proved as a matter of law that the statute of limitations was a bar; 2) the evidence adduced by appellees is legally and factually insufficient to support their claim; 3) the doctrine of "relation back" was incorrectly applied because there was legally insufficient evidence to support same; 4) the evidence was legally insufficient to support application of the discovery rule, and 5) the trial court erred in entering

its findings and conclusions because the evidence is legally insufficient or, in the alternative, factually insufficient.

The above issues outlined in Tesoro's first five points of error are also raised and questioned by Koch in its points of error one, two, three, and fifteen (alleging error by the trial court in applying the two year limitation statute), which attack the trial court's findings and conclusions as legally and factually insufficiently supported by evidence.

### Statute of Limitations

### Relation Back Doctrine

### Discovery Rule

■■■■■■ It is undisputed that the last date on which Tesoro gathered oil from the subject lease was in March 1985. Koch gathered oil from May 1985 until August 1986. The first instance in which the class action is brought against the appellants was by third amended original petition filed June 15, 1990. The statute of limitations was thereby tolled subsequent to this date even though the class was not certified by the trial court until September 17, 1990. *Grant v. Austin Bridge Const. Co.*, 725 S.W.2d 366 (Tex.App.—Houston [14th Dist.] 1987, no writ). The court entered two particular conclusions of law of which Tesoro and Koch complain, first, that the amended petition including the certified class relates back to the time of filing of the first petition of the original plaintiffs and secondly that the "discovery rule" applies in determining when the statute of limitations started running.

The relation back doctrine allows an amended pleading to relate back to the original pleading and its file date. TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (Vernon 1986). The statute clearly states that the amended pleading would be subject to the plea of limitation if it is based on a new, distinct, or different transaction or occurrence. The question before this Court is whether amended pleadings will prevent the running of the statute of limitations against parties who are added in by amended pleadings after the statute has run. This question has been answered in the negative in two cases. *Kirkpatrick v. Harris*, 716 S.W.2d 124 (Tex.

App.—Dallas 1986, no writ); *Leeds v. Cooley*, 702 S.W.2d 213 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). We likewise hold that for statute of limitations purposes, the remaining plaintiffs who were added to the action by plaintiffs' third amended original petition filed June 15, 1990, must use this date to determine viability of their claims.

■■■■■■ As a general rule, a cause of action accrues at the time when facts come into existence which authorize a claimant to seek judicial remedy. *Murray v. San Jacinto Agency Inc.*, 800 S.W.2d 826 (Tex.1990). This rule generally prevails regardless of when the claimant learns of his injury. *Moreno v. Sterling Drug Inc.*, 787 S.W.2d 348 (Tex.1990). The trial court in the case before us employed the discovery rule, a judicially constructed test which operates as an exception to the general rule when the claimant was unable to know of his injury when it accrued. *Riojas v. Phillips Properties, Inc.*, 828 S.W.2d 18 (Tex.App.—Corpus Christi 1991, writ denied). If the defendant fraudulently conceals the existence of a cause of action from the injured party, then the claimant may utilize the discovery rule to toll the statute of limitations. *Leeds*, 702 S.W.2d at 215. The defendant is required to be under a duty to disclose, otherwise the rule does not apply. *Nichols v. Smith*, 507 S.W.2d 518 (Tex.1974). If the claimant relies on fraudulent concealment to toll the statute of limitations, then he has the burden of offering proof raising the fact issue of fraudulent concealment. *Id.*; at 519. For the most part, the discovery rule has been limited to cases in which the facts giving rise to a cause of action are inherently undiscoverable by the claimant. *Johnson v. Abbey*, 737 S.W.2d 68 (Tex.App.—Houston [14th Dist.] 1987, no writ). Public records from the railroad commission introduced in the trial court, complaint letters sent to Tesoro, and testimony that interest owners were aware that royalty payments had ceased as early as May 1984, supports our finding that the discovery rule does not apply in the case before us. *See Harrison v. Bass Enterprises Production Co.*, 888 S.W.2d 532 (Tex.App.—Corpus Christi 1994, n.w.h.).

■ We hold that the four year statute of limitations applies to actions for the recovery of royalty payments. *Dvorken v. Lone Star Industries Inc.*, 740 S.W.2d 565 (Tex.App.— Fort Worth 1987, no writ). All claims by the six original plaintiffs who filed suit against Tesoro and Koch on March 14, 1989, are time barred as to all claims arising prior to March 14, 1985. All claims against Koch and Tesoro arising prior to June 15, 1986, by remaining appellees are likewise barred.[4] We reject appellants' contention that the two year statute of limitations should apply in this case.

### Tesoro and Koch as Payors

■ Tesoro, with points of error six through nine, and Koch in its twelfth and thirteenth points of error, allege error on the part of the trial court in designating Tesoro and Koch as "payors" as defined by the Natural Resources Code. The evidence in the case before us reveals that Tesoro entered into a contract with International to purchase oil from International and International would thereby be responsible for making all payments to the interest owners. At the time of the transaction, "Payor" was defined by Tex.Nat.Res.Code Ann. § 91.401(2) to be:

> "Payor" means the first purchaser of production of oil or gas from an oil or gas well, but the owner of the right to produce under an oil or gas lease or pooling order is deemed to be the payor if the owner of the right to produce and the first purchaser have entered into arrangements providing that the proceeds derived from the sale of oil or gas have been paid by the first purchaser to the owner who assumes the responsibility of paying those proceeds to the payee.[5]

For Tesoro to avoid being designated as payor in view of being first purchaser, Tesoro would have to show that the conditions for the exception as outlined by the above statute were fulfilled. First, there must be a contract between the owner of the right to produce (International) and first purchaser (Tesoro), then payment of proceeds derived from the sale of the oil by Tesoro to International, and lastly the assumption of the responsibility to pay the proceeds to the payees (appellees) by the owner of the right to produce (International). *Northern Nat. Gas Co. v. Vanderburg*, 785 S.W.2d 415 (Tex.App.— Amarillo 1990, no writ). We note the first and third conditions being met by Tesoro, however, the second condition, that of paying all proceeds by Tesoro to International was not completely met because funds were suspended by Tesoro. *Vanderburg*, 785 S.W.2d at 419. As to those suspended payments, Tesoro acted in response to the request by C.C. Wilber, Betty Wilber, Benny E. Wilber, and Walter Van Norman to suspend all payments to International for their benefit. We hold that Tesoro was entitled to hold those funds until proper proof in the form of a division order or otherwise was provided to Tesoro defining the interests to be paid. We hold, therefore, that Tesoro was absolved of responsibility for payments to the payees by its payment to International, the owner of the right to produce.

■ Although Koch and United entered into a purchase contract calling for Koch to be a "second purchaser" we find that this language cannot be binding on the payees. *Vanderburg*, 785 S.W.2d at 419. It may well be effective as between Koch and United, but it cannot avoid the language of section 91.401(2) defining Koch as "payor." The evidence shows that Lance Dreyer, International, United and Clamont were one and the same person. There was no attempt to escape the terms of section 91.401(2) as in the case of Tesoro and International. We find the warranty of ownership provision of the purchase agreement to be insufficient to be construed as an assumption to pay the royalty interest owners. Koch's representation that it owned all the production also prevents this construction. We hold therefore that

---

4. The provisions of Acts of 1983, 68th Leg., R.S., ch. 228, 1983 Tex.Gen. 969, codified as Tex.Nat Res.Code Ann. §§ 91.401–91.405, applied in conjunction with the four year limitation statute determine the viability of each specific claim.

5. This provision was amended in 1991 but it was specifically provided that the amended provision would only be effective as to division orders and transfer orders executed after the effective date of the act, August 26, 1991.

Koch was first purchaser and payor as defined by section 91.401(2).

■ Tesoro's points of error 10 and 11, and Koch's point of error 14, allege error by the trial court in concluding that all plaintiffs (appellees) were payees as defined by TEX. NAT.RES.CODE ANN. § 91.401(1) (Vernon 1993), which states: "Payee means any person or persons legally entitled to payment from the proceeds derived from the sale of oil or gas from an oil or gas well located in this state." We find that except for the application of the statute of limitations, appellees were generally payees for the purpose of section 91.401(1) and we overrule these points of error.

■ Tesoro alleges in points of error 12, 13, and 14 that the trial court erred in awarding maximum lawful interest compounded daily to the appellees because of insufficiency of the evidence. TEX.NAT.RES.CODE ANN. § 91.403(a) (Vernon 1993) provides for an assessment of prejudgment interest against payors who wrongfully withhold funds. *Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co.*, 794 S.W.2d 442 (Tex.App.—Corpus Christi 1990, writ denied) (opinion on rehearing). Section 91.403 does not apply if payments are withheld or suspended by a payor because of conditions enumerated in section 91.402. Section 91.402 provides that payments may be withheld without interest if there is a reasonable doubt that the payee has authorized the sale of its share of oil to the purchaser. Tesoro was entitled to receive a signed division order from the payee as a condition for the payment of proceeds from the sale of oil. After Tesoro was placed on notice of problems in payments that were not being made by International, it acted judiciously in suspending certain payments until its rights and the rights of the interest owners could be determined. It was imperative that Tesoro have an executed division order title opinion. We have already noted that Wilber and others refused to sign Tesoro's division order, we therefore hold that interest penalties should not be assessed against Tesoro under these conditions. We sustain Tesoro's points of error 12, 13, and 14.

■ Tesoro next brings two points of error, 15 and 16, alleging the original plaintiffs' written demand was insufficient. We overrule Tesoro's points of error 15 and 16 because we find that Tesoro had all of the information necessary to be apprised of the demands made by the original plaintiffs. *See Star–Tel v. Nacogdoches Telecommunications*, 755 S.W.2d 146 (Tex.App.—Houston [1st Dist.] 1988, no writ).

■ Tesoro's points of error 17 and 18 and Koch's point of error 16 allege error on the part of the trial court by having found that appellees were entitled to a minimum damage award and attorney's fees under section 91.406 of the Natural Resources Code. Tesoro contends that this section violates the Texas Constitution because the effective date of said section was to apply only to a suit filed on or after the effective date of the act (August 31, 1987). We note that Tesoro and Koch were in fact sued and brought into the lawsuit on March 14, 1989. We hold, therefore, that the Constitution was not violated.

■ Tesoro in its points of error 19 and 20, and Koch in its points of error 4, 5, 6, 7, 8 and 9 allege the trial court erred in holding appellants liable for breach of contract and concluding that such contract was created by TEX.BUS. & COM.CODE ANN. § 2.107 (Vernon 1994). We agree with appellants in that appellees had the burden to prove the existence of a contract and failed. *See Howell v. Kelly*, 534 S.W.2d 737 (Tex.App.—Houston [1st Dist.] 1976, no writ). We find that the record is conclusive that there was no agreement nor any contract, written or oral, between the appellees and either appellant at any time. We find that Uniform Commercial Code Article 2 does not apply to the case at hand and the trial court erred in so holding.

■ In Tesoro's points of error 21 and 22 and in Koch's point of error 10 appellants allege that the trial court erred in concluding that appellants breached their implied covenant of good faith and fair dealing to the appellees under TEX.BUS. & COM.CODE ANN. § 1.203 (Vernon 1994). We have previously found that no contract existed between the parties, therefore, there can be no contractual duty of good faith and fair dealing between

said parties, nor does this situation give rise to an independent tort action. *See Crim Truck & Tractor v. Navistar International,* 823 S.W.2d 591 (Tex.1992); *Crowder v. Tri–C Resources, Inc.,* 821 S.W.2d 393 (Tex.App.— Houston [1st Dist.] 1991, no writ). The implied covenant of good faith and fair dealing has to this point been limited to certain specific contractual relationships none of which are before this Court. *Arnold v. Nat. County Mut. Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987) (insurance contracts); *Manges v. Guerra,* 673 S.W.2d 180 (Tex.1984) (breach of fiduciary duty). We find that neither appellant owed the duty of good faith and fair dealing to the appellees.

Appellant, Tesoro, in points of error 23 and 24, and Koch in their point of error number 11, attack the trial court finding that appellants were liable to appellees under a quasi contractual theory because of insufficiency of the evidence. We find no facts nor does the trial court provide any basis for its conclusion that appellants are liable to appellees under this theory. We sustain these points of error in favor of appellants to the extent that we reject any recovery by appellees on the theory of a quasi contractual relationship between the parties.

■ Tesoro's point of error 25 and Koch's points of error 17, 18, 19, 20, 21, and 22 allege the trial court erred by holding that appellees are entitled to recover under a security interest as provided by TEX.BUS. & COM.CODE ANN. § 9.319(a) (Vernon 1991), which provides:

(a) This section provides a security interest in favor of interest owners (as secured parties) to secure the obligations of the first purchaser of oil and gas production (as debtor) to pay the purchase price. A signed writing giving the interest owner a right under real estate law operates as a security agreement created under this chapter. The act of the first purchaser in signing an agreement to purchase oil or gas production, in issuing a division order, or in making any other voluntary communication to the interest owner or any governmental agency recognizing the interest owner's right operates as an authentication

and adoption of the security agreement . . . for purposes of this chapter.

We find that neither Tesoro or Koch made any agreement, division order or any voluntary communication with any appellee recognizing the interest owned by appellee, therefore this statute does not apply to the case at hand. We have previously found that Tesoro was not a first purchaser, therefore these points of error as discussed are sustained.

■ In Tesoro's points of error 26 and 27 and Koch's point of error 23, appellants allege that the trial court erred by concluding that appellees were entitled to declarations of Tesoro's and Koch's status under the Declaratory Judgment Act. Appellees in their eighth amended original petition requested the trial court enter a declaratory judgment establishing the rights of the appellees after lease termination and further establishing that Tesoro and Koch were "first purchasers" of production and/or "payors" obligated to pay production proceeds directly to the appellees. These issues of the appellants being first purchasers and/or payors were central to the appellees' case-in-chief before the court, therefore, seeking declaratory relief was improper. *John Chezik Buick v. Friendly Chevrolet,* 749 S.W.2d 591 (Tex.App.—Dallas 1988, writ denied). Declaratory judgment is not available to settle issues and rights of parties in a pending suit. *Redwine v. AAA Life Ins. Co.,* 852 S.W.2d 10 (Tex.App.—Dallas 1993, no writ). Plaintiffs' original suit fully covered these issues and request for declaratory judgment presented no new controversies. *See generally BHP Petroleum Co., Inc. v. Millard,* 800 S.W.2d 838 (Tex.1990). We find the trial court to be in error in exercising declaratory judgment relief.

Tesoro's points of error 28, 29, and 30 correspond to Koch's points of error 24, 25, 26, 27, and 28 pertaining to the court's award of attorney's fees. The trial court awarded attorney's fees to the appellees in the amount of $186,315.08 plus $25,000 if the matter is appealed to the Court of Appeals, $5,000 if a writ of error to the Supreme Court is sought and an additional $5,000 if the writ is granted. We find there was sufficient evidence before the trial court to justify an award of

attorney's fees to appellees under TEX.NAT. RES.CODE ANN. § 91.406.

■ Tesoro and Koch each lodge objections to the judgment of the trial court for awarding the above attorney's fees jointly and severally among the various defendants making each liable for the entire award. We note that this litigation began in 1986 against International and United. Tesoro and Koch were not added as defendants until about two and one-half years later. We also note that a fifth defendant, Ada Oil Company, purchased oil from the subject lease after April 1987 in a total amount far exceeding that purchased by Tesoro or Koch. The plaintiffs pursued active discovery with Ada and also litigated termination of the subject lease which did not relate to Tesoro, Ada, or Koch. Appellees also filed bankruptcy proceedings against Clamont. We note that certain attorney's fees and billing records specifically concern the action against Ada. While there must have been certain overlapping, in that work done by appellees' attorneys would apply to more than one defendant at any given time, we find that the attorney's fees could nevertheless have been segregated in a realistic fashion to place responsibility where it belonged. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1 (Tex.1991).

■ As a general rule, the party seeking to recover attorney's fees always carries the burden of proof. *Kimbrough v. Fox*, 631 S.W.2d 606 (Tex.App.—Fort Worth 1982, no writ). The court may only award those fees that are "reasonable and necessary" for the prosecution of the suit. *Green Tree Acceptance, Inc. v. Pierce*, 768 S.W.2d 416 (Tex. App.—Tyler 1989, no writ). In making this showing, the plaintiff is required to prove the fees that were incurred against the particular defendant sought to be charged with said fees. *Sterling*, 822 S.W.2d at 10. In the case before us, Ada settled their portion of the lawsuit, which bears directly on the segregation of attorney's fees.

> When a plaintiff seeks to recover attorney's fees in cases where there are multiple defendants, and one or more of those defendants have made settlements, the plaintiff must segregate the fees owed by the remaining defendants from those owed by the settling defendants so that the remaining defendants are not charged fees for which they are not responsible.

*Sterling*, 822 S.W.2d at 10–11. We recognize the exception to this rule in cases with claims arising out of the same transaction which are so interrelated that prosecution or defense involves proof or denial of essentially the same facts, but we find in the case before us that the attorney's fees are capable of segregation. Regarding the relationship of amounts recovered versus attorney's fees *Sterling* states that: "what a reasonable attorney's fee would be for the entire case indicates what the segregated amounts should be." 822 S.W.2d at 12.

We remand the case to the trial court for segregation of attorney's fees. *International Security Life Ins. Co. v. Finck*, 496 S.W.2d 544 (Tex.1973).

■ Koch brings points of error 29, 30 and 31 alleging generally insufficiency of the evidence to support findings of fact 3, 5, 23, 24, 25, 30, 32, 33 and 59 and conclusions of law 14, 22, 27, and 34. No authority is cited nor are we directed to the record by specific references. We overrule these points for briefing deficiencies. TEX.R.APP.P. 74(f). *Baucom v. Crews*, 819 S.W.2d 628 (Tex. App.—Waco 1991, no writ).

Regarding Koch point of error 32, we find the trial court did not abuse its discretion in certifying the plaintiffs as a class and appointing B.E. Wilber as class representative.

We agree with appellant Koch in its point of error 33 in finding that the division order given from United to Koch was not null and void from its inception as it pertains to Koch and United. We have, however, held that the "second purchaser" provision of said division order was not binding on the payees.

### Summary

We find that the case is mainly governed by TEX.NAT.RES.CODE ANN. § 91.401–91.406 (Vernon 1987) and that all of the provisions thereunder for all damages, penalties, prejudgment interest, and all attorney's fees (including attorney's fees for the appellees on the remand) be determined and awarded to

appellees. We find that at all times material, Tesoro was not a first purchaser as that term is defined by the statute, but became a stakeholder in suspending certain monies and as such is liable to all payees for whom such funds are held plus full pre-judgment interest on the amounts owed. We find that said payees were required to employ legal counsel to retrieve the suspended funds, therefore the payees are entitled to recover reasonable attorney's fees for past and future services to be determined by the trial court.

We hold that the four year statute of limitations applies to the actions filed against Tesoro and Koch. We hold that all claims against Tesoro and Koch by the original plaintiffs arising prior to March 14, 1985, are time barred. We hold that all claims against Tesoro and Koch by the plaintiffs joined by the class action suit arising prior to June 15, 1986, are likewise time barred. We have found and so hold that Koch was a first purchaser as that term is defined by the Natural Resources Code.

■■■ A new trial is necessary and a new award will have to be made because the recovery against Tesoro and Koch will be reduced by the application of the particular statute of limitations. We also hold that attorney's fees awarded appellees will have to be redetermined and segregated as to each responsible party. But it goes without saying that the reasonable attorney's fees for the appellees necessitated by the remand are recoverable and to be awarded below.

We remand this cause to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

WALKER, Chief Justice, dissenting.

I respectfully disagree with the majority's holding that the four year statute of limitations applies.

Both Koch and Tesoro affirmatively contend that the subject matter in controversy is and should be governed by TEX.CIV.PRAC. & REM.CODE ANN. §§ 16.003 and 16.004 (Vernon 1986) and TEX.BUS. & COM.CODE ANN. § 2.725 (Vernon 1994). Both Koch and Tesoro strongly contend for an application of the 2-year statute of limitations provided under § 16.003(a) which provides:

A person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer not later than two years after the day the cause of action accrues.

Appellees, plaintiffs below, sought substantive relief by, through, and under the Texas Natural Resources Code. Since there exists no abundance of case law dealing with this particular legislation, a brief legislative history to be appropriate and helpful.

In 1983, our Texas Legislature enacted Sections 91.401 through 91.405 of the Texas Natural Resources Code. Acts 1983, 68th Leg. p. 966, ch. 228, § 1.

Four bills concerning this topic were introduced: HB 1775, SB 146, and identical bills HB 1266 and SB 731. On April 12, 1983, the House Energy Committee considered HB 1775 and HB 1226 together at public hearing. The House Study Group reported on the bill on April 21, 1983. The House Study Group reported arguments for and against the bill, summarizing each of the bills that had been introduced on the subject. When HB 1775 reached the House floor on April 21, 1983, same was amended to include new language for § 91.403(a) and to add § 91.405 (House Journal Report dated April 21, 1983). House Bill 1775, as amended, became effective September 1, 1983. This legislation was effective when Tesoro and Koch purchased crude oil under the lease.

Prior to the 1983 enactment, no specific laws protected royalty owners from intentional practices to delay their royalty checks. While it was generally accepted that a great deal of these delays stem from legitimate title problems, it was also recognized that some delays were intentional and should be addressed by the Legislature. It was the admirable intent of our Legislature to compel timely payment of proceeds to royalty interest owners by those persons or entities occupying the status of a "payor." TEX.NAT.RES. CODE ANN. § 91.401(2) (Vernon 1993) defines

those parties against whom this cause of action may be brought. "Payor" prior to the 1991 amendment meant:

[T]he first purchaser of production of oil or gas from an oil or gas well, but the owner of the right to produce under an oil or gas lease or pooling order *is deemed to be the payor* if the owner of the right to produce and the first purchaser have entered into arrangements providing that the proceeds derived from the sale of oil or gas have been paid by the first purchaser to the owner who assumes the responsibility of *paying those proceeds to the payee.* (emphasis added)[1]

In view of the foregoing statutory definition of the term "payor," the precise status of Koch and Tesoro in relationship to International and those royalty interest owners must be determined. Without question, Tesoro was a "first purchaser" of oil from International, while Koch, by written agreement with United, was a "second purchaser," however, this fact does not automatically propel Tesoro and Koch to the status of payor. Why? Because the statute determines in clear language that the owner of the right to produce under an oil or gas lease or pooling order (International/United) is *"deemed"* to be the payor where there is an agreement between first purchaser (Koch and Tesoro) and owner of the right to produce (International/United), said owner of the right to produce then assumes the responsibility of paying the payees.

I believe that § 91.401(2) creates unto Koch and Tesoro a no duty posture as to payees unless Koch and Tesoro received notice prior to payment of any particular purchase, that payor, International/United, had not fulfilled its obligation to payees. To state otherwise would require a harsh and undue burden upon first purchasers to investigate and then intervene in contractual matters between the owner of the right to produce oil and gas and its payees.

In view of statutory history, it is clear that our Legislature gave consideration to overall economic utility prior to its enactment of these pertinent statutes. Obviously, our Legislature's foremost concern was the protection of those royalty interest payees entitled to payment. What address better serves the economic utility of a free-flowing oil industry, than placing the burden to protect payees upon that party most directly in line to do so, i.e., the producer of the well who operates under contract with its lessors.

Even though our Legislature's concern was the protection of payees, certainly it was not intended that payees be allowed indiscriminate selection of targets. Certainly, the Legislature had a more orderly, fair and just intent. Good faith purchasers of oil and gas from producers, without notice from unpaid payees, should not be imposed with a duty to audit a producer's contractual performance. Nor should payees be allowed to sit idly by while first purchasers pay the producers the full purchase price, then punish these purchasers for the sins of their non-paying producer.

Koch paid United one hundred percent (100%) of the oil purchase price during its contractual relationship with United. Tesoro did likewise, except for the December 1984 payment when only a very few of the alleged royalty interest owners complained of non-payment. Furthermore, I believe the majority has cast Koch and Tesoro in the untenable position of becoming grantors of the duty flowing from International to its payees. It was not our Legislature's intent to confound the oil industry in the State of Texas with such a burdensome and potentially devastating result. Devastating, because if the majority be correct, all first purchasers of oil

---

1. The 1991 amendment now provides the following:

"Payor" means the party who undertakes to distribute oil and gas proceeds to the payee, whether as the purchaser of the production of oil or gas generating such proceeds or as operator of the well from which such production was obtained or as lessee under the lease on which royalty is due. The payor is the first purchaser of such production of oil or gas from an oil or gas well, unless the owner of the right to produce under an oil or gas lease or pooling order and the first purchaser have entered into arrangements providing that the proceeds derived from the sale of oil or gas are to be paid by the first purchaser to the owner of the right to produce who is thereby deemed to be the payor having the responsibility of paying those proceeds received from the first purchaser to the payee.

and gas who have paid the owner of the right to produce such oil and gas, must now pay again for each unit purchased. This simply cannot be what our State Legislature had in mind.

In the case before us, Koch paid one hundred percent (100%) of the required purchase price of the oil to International. Tesoro paid one hundred percent (100%) of the required purchase price to International up until Tesoro received Mr. Thanheiser's letter of December 18, 1984, at which time Tesoro suspended payment to International on behalf of those royalty interest owners named by letter. The record reflects that Tesoro suspended funds for C.C. Wilber, Betty Wilber, Benny E. Wilber and Walter Van Norman. Tesoro, then in an effort to investigate whether International was in fact making payment to its payees, contacted Mr. Dreyer, to notify him of Mr. Thanheiser's letter. On January 22, 1985, Dreyer signed a false affidavit stating that he possessed signed division orders from persons who owned royalty interests.

Did Tesoro's decision to suspend payment to International recast Tesoro's role to that of payor? I think not. Upon receiving notice to suspend payment for certain named royalty interest owners, Tesoro became trustee for the benefit of those royalty interest owners named.

Having defined the respective roles of Koch and Tesoro as that of innocent and good faith purchasers of oil from International/United, without notice of unpaid royalty interest claims, (excepting the December purchase by Tesoro), which limitation period should apply, i.e., the two year or four year?

Appellees, plaintiffs below, proceeded to trial on their Eighth Amended Petition. The substantive basis of plaintiffs' claims rests in Sections 91.401–91.406 of the Texas Natural Resources Code. Plaintiffs also sought to perfect a security interest in the proceeds from the sale and purchase of oil through TEX.BUS. & COM.CODE ANN. § 9.319 (Vernon 1991). Further, plaintiffs sought the recovery of attorneys fees under TEX.CIV.PRAC. & REM.CODE ANN. §§ 37.009 and 38.001 (Vernon 1986).

The Texas Natural Resources Code fails to include any limitations provision, thus we must seek other statutory guidelines. No case law has yet interpreted a limitations question under our Texas Natural Resources Code, thus, for guidance we should focus on Section 16.003(a) of the Texas Civil Practice and Remedies Code which is previously set forth verbatim.

Severed oil becomes personalty and the failure to pay royalty proceeds constitutes a detainment of personal property. I agree with the majority that where the claim for royalty payments is based on contractual rights between the parties, the four year statute of limitations governs. *See Dvorken v. Lone Star Industries, Inc.,* 740 S.W.2d 565 (Tex.App.—Fort Worth 1987, no writ). However, here we have no direct contractual relationship between appellees and Koch or Tesoro. Without comment as to viability or substance, plaintiffs' claim against Koch and Tesoro are in the nature of a claim for conversion. A conversion of proceeds or a conversion of oil itself after severance from the land would be a conversion of personal property. *See Bodin v. Gulf Oil Corp.,* 707 F.Supp. 875, 877 (E.D.Tex.1988), citing *W.B. Johnson Drilling Company v. Lacy,* 336 S.W.2d 230, 233 (Tex.Civ.App.—Eastland 1960, no writ). Since plaintiffs seek remuneration against Koch and Tesoro for the value of oil production proceeds already once paid by these purchasers, I view plaintiffs' claim as that of wrongful exercise of dominion and control over oil. Absent either a contractual duty and obligation or statutory requirement as to Koch and Tesoro, I am compelled to apply the two year statute of limitation period as provided in § 16.003 of the Texas Civil Practice and Remedies Code.

In an effort to overcome limitations problems, plaintiffs urged the trial court to consider the "relation back" doctrine and the "discovery rule." If the two year limitation period controls, the "relation back" doctrine is of no avail to appellees and the trial court erred in so finding. The "relation back" doctrine allows an amended pleading to relate back to the original pleading in limited circumstances. This doctrine, having its origin in common law, was later enacted as

TEX.REV.CIV.STAT.ANN. art. 5539b (now codified as § 16.068 of the TEX.CIV.PRAC. & REM. CODE). At common law, an amended petition related back to the filing of the original petition even though new facts were alleged, provided that the cause of action remained the same. *Chien v. Chen,* 759 S.W.2d 484, 493 (Tex.App.—Austin 1988, no writ). Common law provided four elements in determining whether an amended pleading sets up a different cause of action: 1) Would a recovery had upon the original pleading bar a recovery under the amended pleading? 2) Would the same evidence support both of the pleadings? 3) Is the measure of damages the same in each case? 4) Are the allegations of each, subject to the same defenses? *Id.* at 493.

Article 5539b expressly provided that an amendment to a pleading shall not be subject to limitations where the amendment is not wholly based on or grows out of a new, distinct or different transaction or occurrence.

The trial court's use of the "relation back" doctrine to resurrect claims for seventy-five newly added plaintiffs, was error even should a four year limitation period apply. The "relation back" doctrine does not purport to deal with amendments which add parties. *Stokes v. Beaumont, Sour Lake, & Western Railway Co.,* 161 Tex. 240, 339 S.W.2d 877 (1960); *Chien, supra,* at 493. An amended pleading relates back unless a new party is added. *Kirkpatrick v. Harris,* 716 S.W.2d 124, 125 (Tex.App.—Dallas 1986, no writ), see also *Leeds v. Cooley,* 702 S.W.2d 213, 215 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (tolling occurs when a party defendant is brought into the suit and not when the original pleading is filed). When a plaintiff is added to a suit after the statute of limitations has run, that action is barred as to that new party plaintiff. *Baker v. Gulf, C. & S.F. Ry. Co.,* 184 S.W. 257, 260 (Tex.Civ. App.—Austin 1916, no writ). See also *City of Fort Worth v. Zane–Cetti,* 29 S.W.2d 958, 961 (Tex.Comm'n App.1930, holding approved).

Regarding applicability of the "discovery rule," generally speaking, a cause of action accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990). A cause of action generally accrues regardless of when a plaintiff learned of an injury. *Moreno v. Sterling Drug, Inc.,* 787 S.W.2d 348, 351 (Tex.1990).

The discovery rule is a judicially constructed test which is used to determine when a plaintiff's cause of action accrued. *Id.* at 351. The discovery rule is applied to situations where a claimant was unable to know of his injury at the time of the actual accrual. *Riojas v. Phillips Properties, Inc.,* 828 S.W.2d 18, 21 (Tex.App.—Corpus Christi 1991, writ denied). When effectively applied, the discovery rule tolls the running of the statute of limitations until the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of the injury. *See Willis v. Maverick,* 760 S.W.2d 642 (Tex.1988). The discovery rule has been limited to matters properly characterized as inherently undiscoverable. *Rose v. Baker & Botts,* 816 S.W.2d 805, 810 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

Texas courts have yet to apply the discovery rule to a case involving non-payment of royalties by a purchaser of oil.

In the case before us, royalty owners were not unaware that Koch and Tesoro purchased oil from International/United. In fact, plaintiffs produced public records from the Railroad Commission which identified Tesoro as the gatherer. Limitations began to run when the fact of injury is known, not when the alleged wrongdoers are identified. *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 344 n. 3 (Tex.1992). Our record shows that several persons sent complaint letters to Tesoro indicating their obvious awareness that royalty payments ceased when International received the assignment.

During trial below, B.E. Wilber testified regarding discovery, otherwise, there is legally and factually insufficient evidence to sustain a finding as to the remaining class members. *See Greenhaw v. Lubbock County Beverage Ass'n,* 721 F.2d 1019, 1029–30 (5th Cir.1983), *overruled on other grounds by International Woodworkers v. Champion In-*

*tern.,* 790 F.2d 1174 (5th Cir.1986). (Testimony by one class member regarding discovery rule could not be used to support a finding with regard to the class as a whole). The burden of proving the applicability of the discovery rule rested upon the plaintiffs and there is legally and factually insufficient evidence to sustain the trial court's judgment. *See Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515 (Tex.1988).

Appellees further seek to avoid limitation as to Tesoro by positioning that Tesoro acknowledged a debt by letter dated March 8, 1985. To revive a barred claim by acknowledgement of a debt, a plaintiff must prove a promise to pay or an assumption of an obligation which must 1) be in writing; 2) contain an unequivocal acknowledgement of the justness or the existence of the particular obligation or claim; and, 3) express a willingness to honor the obligation or claim. *West Texas Gathering Co. v. Exxon Corp.,* 837 S.W.2d 764, 777–78 (Tex.App.—El Paso 1992), *rev'd on other grounds, Exxon Corp. v. West Texas. Gathering Co.,* 868 S.W.2d 299 (Tex.1993). *Andrews v. Cohen,* 664 S.W.2d 826, 828–29 (Tex.App.—Tyler 1984, writ ref'd n.r.e.). TEX.CIV.PRAC. & REM.CODE § 16.065 (Vernon 1986).

Our class plaintiffs failed to identify a written promise or acknowledgement of a debt. The letter addressed to Charles Thanheiser, written prior to class-wide representation, cannot revive claims asserted by all other class members. Plaintiffs failed to prove an unequivocal acknowledgement of the justness of a "debt" owed to any plaintiff. The letter of March 8, 1985, was simply a request that Thanheiser's client sign a division order verifying ownership interest. Neither did Tesoro make an unconditional acknowledgement of debt. "If an acknowledgement of the existence of an indebtedness is qualified by a conditional promise to pay, a promise different from the one so expressed will not be implied and the creditor must fulfill the named condition as a prerequisite to the debtor's liability on the new promise." *Andrews,* 664 S.W.2d at 829. For argument purposes, even if the March 8, 1985 letter contained a general acknowledgement of indebtedness, it also contained certain condi-

tions precedent to payment. More specifically it required Mr. Wilber to sign a division order. Mr. Wilber fully understood the import of Tesoro's beckoning by his statement that "if I executed a division order, the funds they were holding would start being paid, and the other proceeds would be paid." I view this as an admission by Mr. Wilber of his failure to comply.

Appellees cite *Friedman v. Worthy Fabrics,* 347 S.W.2d 639 (Tex.Civ.App.—El Paso 1960, no writ). In *Friedman,* the court dealt with a letter written by a debtor which clearly acknowledged a debt. Such is not the case regarding the letter of March 8, 1985, sent by Tesoro. The sufficiency of an acknowledgement of debt is a question of law to be determined by the court. *Id.* at 640. I would hold that as a matter of law plaintiffs failed to prove the acknowledgement of a debt which would defeat the statute of limitations.

Appellees seek further to delay accrual of limitations by claiming that the Natural Resources Code (statutory notice provision) constitutes a demand which is an integral part of a cause of action or a condition precedent to the right to sue. Appellees cite *Foreman v. Graham,* 363 S.W.2d 371 (Tex. Civ.App.—Beaumont 1962, no writ), claiming the statute of limitations does not begin to run until plaintiffs sent Tesoro copies of their demand to International on September 4, 1986.

In *Foreman,* a demand became a condition precedent to the accrual of a cause of action because the debt, based upon unwritten loans, was made for an indefinite period of time and was due only upon expressed demand. Generally, a note without a time for repayment is a demand note and is actionable immediately. "If, however, a demand is an integral part of a cause of action, or a condition precedent to the right to sue, limitations does not begin to run until a demand is made, unless demand is waived or is unreasonably delayed." *Martin v. Ford,* 853 S.W.2d 680, 682 (Tex.App.—Texarkana 1993, writ denied).

The statutory notice provision, Section 91.404(a), requires the "payee" to give the "payor" written notice of the failure to make

a timely payment as "a prerequisite to beginning judicial action against the payor for nonpayment." It does not delay the accrual of the cause of action because a cause of action must arise prior to judicial action.

Statutory notice requirements as prerequisites to judicial action are reasonable efforts to discourage litigation and to encourage non-litigious settling of disputes. For example, in *Hines v. Hash*, 843 S.W.2d 464 (Tex. 1992), the court dealt with the notice requirement in the Deceptive Trade Practices Act. That notice provision also requires written notice "as a prerequisite to filing a suit seeking damage." *See* TEX.BUS. & COM.CODE ANN. § 17.505(a) (Vernon Supp.1995). The purpose of this DTPA notice provision is the same as that of the Medical Liability and Insurance Improvement Act (TEX.REV.CIV.STAT.ANN. art. 4590i § 4.01) (Vernon Supp. Pamph.1995). Failure to give proper notice does not require dismissal of the action but does allow a defendant to seek abatement for requisite notice. Since a defendant can waive notice, it is not an integral part of the cause of action.

Here plaintiffs, appellees, overreach, for if a statutory notice provision became an integral part of a cause of action then a plaintiff could delay indefinitely before sending notice. Clearly, this is not the purpose of the statutory notice provision since it would render any statute of limitations unavailable.

Since one element of plaintiffs' cause of action to recover against Koch and Tesoro is based in breach of contract theory, it is compelling that I address the viability of this claim as same may relate to the extending of the limitations period from two years to four years.

Plaintiffs' Eighth Amended Petition alleged that Koch and Tesoro's actions placed those entities "in default and violation of their express or quasi-contractual obligations." The trial court found that there was, in fact, "an agreement between Koch/Tesoro and the plaintiffs in regard to the purchase of oil from the Gephart lease," and that appellants failed to perform under that " 'agreement' ".

The record before us is conclusive that there was never any agreement or contract, either written or oral, between plaintiffs and Koch or Tesoro. This fact was agreed upon by Mr. Wilber, plaintiffs' expert witness, Gerald Dupont, and Koch's trial representative, Steve Wyman.

It is a truism that there can be no breach of a contract unless there was, in fact, a contract to be breached. The trial court's finding of an existence of a contract was error and precipitated numerous other erroneous findings and conclusions.

When faced with the reality that there was no agreement or expressed contract between plaintiffs and Koch/Tesoro, plaintiffs then redirect their course of argument to the provisions of TEX.BUS. & COM.CODE ANN. §§ 2.105 and 2.107 (Vernon 1994), which plaintiffs contend created a contractual obligation running from Koch and Tesoro to the plaintiffs. The trial court determined that, pursuant to § 2.107, appellants' agreement with the plaintiffs was a contract for the sale of minerals or the like (including oil and gas), and that privity between these first purchasers and plaintiffs was not required to invoke liability under that statute.

TEX.BUS. & COM.CODE § 2.107(a) reads, in pertinent part:

> A contract for the sale of minerals or the like (including oil and gas) . . . is a contract for the sale of goods within this chapter if they are to be severed by the seller but until severance a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

This statute was not intended to create a contract where no contract existed. The statute simply declares that an existing contract for the sale of oil and gas, in certain circumstances, is deemed a "contract for the sale of goods" under the code.

Appellees, plaintiffs below, had no pleadings supporting a right of recovery under § 2.107 of the Business and Commerce Code and it was error for the trial court to impose liability upon Koch and Tesoro pursuant to that statute.

For reasons stated, I would hold that the two year statute of limitations is applicable to all claims made by all plaintiffs against appellants, Koch and Tesoro. If the two year statute of limitations applies, all claims by all plaintiffs against Koch and Tesoro would be effectively extinguished. This should not, however, affect those funds which were voluntarily held by Tesoro for the benefit of those royalty interest owners named.

I would reverse the judgment of the trial court and render judgment that plaintiffs have and recover nothing from appellants, Koch and Tesoro.

Timothy W. Sorenson, Dallas, for appellant.